**KRONENBERGER ROSENFELD, LLP**

Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDWARD FIELDS**, an individual, **CATHIE O'HANKS**, an individual, and **ERIK KRISTIANSON**, an individual, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>**WISE MEDIA, LLC**, a Georgia Limited Liability Company, **MOBILE MESSENGER AMERICAS, INC.**, a Delaware Corporation, and **DOES 1-10**, inclusive,<br><br>Defendants. | Case No.  C 12  5160<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Case No.

**CLASS ACTION COMPLAINT**

Plaintiffs Edward Fields, Cathie O'Hanks, and Erik Kristianson, individually and on behalf of a class of similarly situated persons, bring this action, by and through their undersigned counsel, and allege as follows:

## INTRODUCTION

1.      This action concerns a scheme by Defendants Wise Media, LLC ("Wise Media") and Mobile Messenger Americas, Inc. ("Mobile Messenger") (collectively, "Defendants") to enroll consumers—without their knowledge or consent—in short message service ("SMS") text subscription plans with monthly membership fees of $9.99.

2.      According to Defendants, consumers voluntarily subscribe to receive three SMS texts per week, delivered to their cellular phones, which texts provide various tips or trivia, such as flirting tips, via "lovegenie," or horoscope updates, via "horoscopegenie" (the "Subscription Plans").

3.      The truth is, no consumers voluntarily subscribed to any such service. Rather, Defendants sent unsolicited texts to consumers who had no prior relationship with Defendants.

4.      Regardless of whether a consumer responded to Defendants' initial text, in a manner of minutes Defendants enrolled the consumer in one of the Subscription Plans without the consumer's authorization, and charged the consumer $9.99 per month until the consumer noticed the charge and cancelled the service.

5.      The Federal Trade Commission (the "FTC") recently condemned this practice of imposing unauthorized charges, known as "cramming," in the cell phone industry. The FTC stated that it and the Federal Communications Commission (the "FCC") have reviewed thousands of cramming complaints in the past few years, but even that volume represents just the tip of the iceberg. The FTC noted that "many of the complaints involve recurring charges of just under $10 a month for 'premium services' that provide trivia or horoscope information by text message to a consumer's phone," the very scheme that Plaintiffs here challenge.

//

Case No.                                   1                              **CLASS ACTION COMPLAINT**

6.     As a result of Defendants' misconduct, including their use of consumers' cell phone numbers to send unsolicited text messages and to involuntarily enroll consumers in one of the Subscription Plans, Plaintiffs and numerous other consumers similar to Plaintiffs were wrongfully charged subscription fees and/or text fees.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. §1331 for Plaintiffs' claim under the Telephone Consumer Protection Act, 47 U.S.C. §227.  This Court has subject matter jurisdiction under 28 U.S.C. §1367 for Plaintiffs' remaining claims because they are so related to Plaintiffs' federal claim that they form part of the same case or controversy under Article III of the U.S. Constitution.

8.     This Court also has subject matter jurisdiction over this matter under 28 U.S.C. §1332(d)(2) because this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which a member of the class of plaintiffs is a citizen of a State different from both Defendants.  On information and belief, less than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of California.

9.     This Court has personal jurisdiction over Defendants because a substantial part of Defendants' misconduct that gave rise to this action occurred in California, including because Plaintiffs reside in California and were harmed in California. Moreover, Defendant Mobile Messenger has its headquarters in Los Angeles, California.

10.     Venue is proper under 28 U.S.C. §1391(a)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  To wit, Plaintiffs reside in this district and were harmed in this district, and on information and belief, numerous other class members reside in this district.

## INTRADISTRICT ASSIGNMENT

11.     Pursuant to Local Civil Rule 3-2(c), this action should be assigned to the San Francisco Courthouse because a substantial part of the events or omissions that gave rise to the claims occurred in Alameda and Contra Costa Counties, California.

Case No.                                        2                        **CLASS ACTION COMPLAINT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

## PARTIES

12.     Plaintiff Edward Fields is an individual residing in Albany, California.

13.     Plaintiff Cathie O'Hanks is an individual residing in El Cerrito, California.

14.     Plaintiff Erik Kristianson is an individual residing in El Cerrito, California.

15.     Defendant Wise Media, LLC is a Georgia limited liability company based in Grayson, Georgia.

16.     Defendant Mobile Messenger Americas, Inc. is a Delaware corporation based in Los Angeles, California.

17.     Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive (the "Doe Defendants") and therefore sues these Defendants by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of Does 1 through 10, inclusive, when ascertained. Plaintiffs are informed and believe, and, on that basis, allege that each Defendant sued herein by a fictitious name is in some way liable and responsible to Plaintiffs based on the facts herein alleged.

## FACTUAL ALLEGATIONS

### The Cottage Industry of Cramming Fraud

18.     A recent Senate Commerce Committee report found that telephone companies place approximately 300 million third-party charges on their customers' landline bills, **amounting to more than $2 billion in charges each year.** *Unauthorized Charges on Telephone Bills*, Staff Report of Committee on Commerce, Science, and Transportation, Office of Oversight and Investigations, July 12, 2011, at ii.

19.     Telephone customers "overwhelmingly reported" that third party charges discovered on their bills were unauthorized. *Id.*

20.     The Committee ultimately concluded that although there are "some legitimate companies" in the third party billing industry, id., at 44, "many third-party vendors are illegitimate and *created solely to exploit third-party billing.*" *Id.*, at iii (emphasis added).

21.   As a result, "third-party billing has made telephone customers targets for fraud." Id., at 44.

22.   The Committee Report noted that although its findings were focused upon third party billing abuses on landline phones, cramming on wireless phones is subject to the same problems. *Id.*, at 6.

23.   Cramming fraud in the wireless industry was examined in recent FCC administrative proceedings. *In the Matter of Empowering Consumers to Prevent and Detect Billing for Unauthorized Charges ("Cramming")*, CG Docket No. 11-116.

24.   The Commission has acknowledged that the percentage of cramming complaints appears to have nearly doubled from 2008-2010 to 2011.   This dramatic increase is reflective of a trend that "overwhelming[ly] demonstrates [it] … to be … a significant problem," resulting "in millions of fraudulent charges being placed on consumer bills, ….".   Comments of the Center for Media Justice, Consumer Action, Consumer Federation of America, Consumers Union, Nation Consumer Law Center, and National Consumer League, at 10.

25.   Of particular relevance to this lawsuit, these public interest groups noted that "[e]arlier this year, for example, there were reports of thousands of complaints about $9.99 a month charges for "mobile purchases" stemming from allegedly unsolicited and unwanted text messages from a company known as "Love Genie Tips." *Id.*

26.   The National Consumer Law Center noted that "[m]any times, text spam will include a message like: 'HoroscopeGenie Alert: 3horoscopes/wk for $9.99/mo Reply HELP for help, STOP to cancel. Msg&data rates may apply.' If a consumer does not reply "STOP," then the spammer assumes that the consumer wants the service and bills the consumer despite never receiving any affirmative consent. Sometimes, even when a consumer tells the crammer to stop, the crammer will continue to charge the consumer." Id., at 12.

27.   A Google search for "lovegenietips" or "horoscopegenie" produces at least five pages of hits containing complaints from consumers alleging that they never

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA   94108

subscribed to these "services" and were nevertheless charged $9.99 per month on their phone bills until they discovered the unauthorized charges.

28.    The site scambook.com has a representative sampling of Wise Media complaints, all alleging the same unauthorized charges.

- Wise Media LLC Complaint 133772 for $9.99

  Posted Jul 10th, 2012

  Today I received my t-mobile bill and I was charged 9.99 plus taxes for a subscription on Wise Media LLC. I never subscribed for anything and I never received a text or email confirming any…

- Wise Media LLC Complaint 104822 for $9.99

  Posted Apr 20th, 2012

  This appeared on my child's line and I am so mad…How can they do this?!!! There is no agreement or use of their services what so ever on our part. I need this resolved!

- WiseMediaUS Complaint 124415 for $19.98

  Posted Jun 11th, 2012

  I was billed by AT&T. It was attached to my AT&T bill by www.mblox.com. However when I called mblox they said that it was a bill from WiseMediaUS and I would get a call back, but no one…

- Wise Media LLC Complaint 145308 for $9.99

  Posted Aug 10th, 2012

  I was charged in my cell ph 9.99 for a "subscription" that I supposedly bought. This is a total scam, that is not true, I never bought anything from them. I called my cell provider and they…

- Wise Media (Love Genie Tip Alerts Phone Number Complaint 92686 for $9.99

  Posted Mar 23rd, 2012

  Received text and called immediately telling I did not authorize such a charge and asking what the company does (no reply). I then told the operator to cancel immediately and was told I would receive…

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

- LongLifeLoveTipsAle and LoveTips4LifeAlerts Complaint 79648 for $21.52

Posted Feb 26th, 2012

I noticed my cell phone bill was much higher. There are 2 charges dated 02/10/12 and 02/12/12 both from a Wise Media titled LongLifeLoveTips Ale and LoveTips4Life Alerts both charges are 9.99 each…

29.     The New  York Times featured Wise Media's HoroscopeGenie "service" in an April 7, 2012 follow-up to an earlier article [March, 28 2012] detailing a Massachusetts' doctor's story of being victimized by this fraud.

### The Mechanics of Defendants' Cramming Fraud

30.     On information and belief, Defendants own, operate, and/or support the Internet websites located at <www.lovegenietips.com>, <www.horoscopegenie.com>, <www.longlifelovetips.com>, <www.gossiprage.com>, <www.diettipz.com>, and <lovetips4life.com> (the "Websites").   The Websites offer consumers the opportunity to enroll in subscription SMS text plans[1], whereby consumers receive flirting tips, horoscope updates, celebrity gossip, or weight loss advice a few times per week for $9.99 per month.

31.     The Websites' home pages display these offers and provide a method through which consumers can theoretically enroll in the Subscription Plans voluntarily.

32.     However, no consumers actually enrolled in the Subscription Plans voluntarily.

33.     Rather, on information and belief, Defendants obtained the mobile phone numbers of consumers without the consumers' knowledge or consent.   Defendants obtained these numbers for consumers who had never visited the Websites, who had never expressed interest in Defendants or the Subscription Plans, and who had no existing or prior relationship with Defendants.

34.     Without any action or solicitation by the consumers, Defendant Wise Media sent SMS texts to the mobile phone numbers that Defendants had acquired (the "Initial Text").

---

[1] An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

35.    On information and belief, Wise Media sent these SMS texts using equipment that had the capacity to store or produce telephone numbers to be called, using a random sequential number generator.

36.    As an example, for consumers who were charged for the Lovegenietips Subscription Plan, the Initial Texts stated:

> Lovegenietips    Flirting    Tips;   3msg/week    for    $9.99/m    T&Cs:
> lovegenietips.com Msg&data rates may apply. Reply HELP for help, STOP
> to cancel. PIN ****

37.    On information and belief, consumers who were enrolled in the other Subscription Plans received similar Initial Texts tailored to the specific plan.

38.    Depending on the consumer's mobile service plan, the consumer may have been charged for receiving the Initial Text and subsequent texts.

39.    Regardless of whether a consumer responded to the Initial Text, in a manner of minutes, Defendants enrolled the consumer in one of the Subscription Plans without the consumer's knowledge or consent.

40.    Once enrolled, Defendants billed the consumer $9.99 per month for the Subscription Plan until the consumer cancelled the service.

## Defendants' Roles in the Misconduct

41.    On information and belief, Defendants Wise Media and Mobile Messenger both knew about and actively participated in the above-described misconduct.

42.    On information and belief, Defendants Wise Media and Mobile Messenger acted together to collect consumers' cell phone numbers for the purpose of sending the Initial Text and enrolling consumers in a Subscription Plan without the consumers' knowledge or consent.

43.    Moreover, Defendant Wise Media actually sent the Initial Texts, sent follow up texts, and charged the monthly subscription fees on consumers' monthly cell phone bills while knowing that consumers had not voluntarily enrolled in the Subscription Plan.

44.    On information and belief, Defendant Mobile Messenger provided customer data to Wise Media to send the Initial Texts, coordinated the billing of consumers with the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

consumers' mobile service provider, provided customer support to consumers enrolled in a Subscription Plan, and responded to complaints from consumers, including by obtaining consumers' names and mailing addresses to process supposed refunds.

**Plaintiff Fields**

45.    On March 13, 2012 at 6:05 a.m., Plaintiff Fields received an SMS text message from a five-digit number, 836-60.  The text advertised a flirting tips service (i.e., LoveGenieTips), which offered 3 flirting tip texts per week for a charge of $9.99 per month.

46.    Two minutes later, at 6:07 a.m., Fields received a second SMS text message from the same five-digit number, 836-60, stating that he had been enrolled in the LoveGenieTips Subscription Plan.

47.    Plaintiff was in bed asleep when he received the texts.  Although the sound of his phone signaling the first text woke him up, he did not leave his bed until after both text messages had been received, and only viewed them once he had arisen.

48.    Fields did not recognize the five-digit sender number or LoveGenieTips. Fields did not enroll in any flirting tips subscription plan and did not authorize the sending of the texts.

49.    Fields does not often use text messages, and thus he does not have a monthly text or data allotment as part of his wireless plan.  Fields is charged $0.20 for each text he receives by his wireless carrier, AT&T.

50.    Because Fields knew that he would be charged for each of the unsolicited text messages, he called AT&T later that day to ask that the charges be removed.  When he spoke with a representative of AT&T, he was informed that he had also been charged $9.99 for the Lovegenietips Subscription Plan.

51.    Fields never intended to enroll in the Subscription Plan.  Fields did not have a relationship with Defendants, had not solicited any goods or services from Defendants, and had not responded to any of the texts.

//

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

52.   Fields' subsequent mobile phone bill contained a Monthly Subscription charge dated March 13, 2012 for LoveGenieTips Alerts in the amount of $9.99.  The bill provided the information for the subscription provider as Wise Media with contact information listed as 800-331-0500 (a phone number for AT&T).  Fields' mobile phone bill also contained two $0.20 charges for the unsolicited text messages.

53.   While Fields was able to convince his mobile service provider to refund the Subscription Plan charges, he was not able to obtain a refund for the two $0.20 text charges.

54.   Fields never authorized the charge for the Lovegenietips Subscription Plan, which was charged to his cell phone bill the same day and presumably minutes after he received the first SMS text message from 836-60.  Nor did Fields authorize the unsolicited texts or the resulting charges.

### Plaintiffs O'Hanks & Kristianson

55.   Plaintiff O'Hanks is Plaintiff Kristianson's grandmother.

56.   O'Hanks and Kristianson share a mobile phone service plan.  To wit, the monthly charges for Kristianson's and O'Hanks' cell phones appear on a single bill, which is directed to and paid by O'Hanks.  This type of mobile service plan is commonly referred to as a friends-and-family plan.

57.   On February 3, 2012, Kristianson received an SMS text message from a five-digit number, 271-40.  The text advertised a horoscope updates service (i.e., HoroscopeGenie), which offered 3 horoscope texts per week for a charge of $9.99 per month.

58.   Kristianson did not recognize the five-digit sender number or HoroscopeGenie.

59.   Kristianson had never expressed interest in any horoscope texting service and had never heard of either of the Defendants or their horoscope-related websites.

//

//

Case No.                                          9                    **CLASS ACTION COMPLAINT**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108



60.     Because Kristianson did not recognize the five-digit sender number and had no interest in horoscope services, he sent a reply text indicating that he did not want to be enrolled in the HoroscopeGenie Subscription Plan.

61.     Despite Kristianson's reply text, Defendants enrolled Kristianson in the HoroscopeGenie Subscription Plan and charged O'Hanks $9.99 per month on O'Hanks' cell phone bill.

62.     Neither Kristianson nor O'Hanks ever authorized the charges for the HoroscopeGenie Subscription Plan, which was charged to O'Hanks' cell phone bill. Neither Kristianson nor O'Hanks authorized the unsolicited texts.

63.     Because of the voluminous nature of O'Hanks' cell phone bill, O'Hanks did not discover these unauthorized charges for three months.

## CLASS ACTION ALLEGATIONS

64.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Kristianson and Fields bring this action on their own behalf and as representatives of all persons who received unsolicited SMS text messages from or on behalf of Defendants (the "Text Receipt Class").

65.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff O'Hanks bring this action on her own behalf and as a representative of all persons who: a) received unsolicited SMS text messages from or on behalf of Defendants, and b) who were charged for a Subscription Plan on their cell phone bills (the "Enrollment Class").

66.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Fields bring this action on his own behalf and as a representative of all persons who: a) received unsolicited SMS text messages from or on behalf of Defendants, and b) who were charged for receiving those text messages (the "Text Charge Class").

67.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff O'Hanks also brings this action on her own behalf and as a representative of all persons who: a) received unsolicited SMS text messages from or on behalf of Defendants, b) who were charged for a Subscription Plan on their cell phone bills, and c) who resided in California

1  during some or all of their enrollment in the Subscription Plan (the "California Enrollment

2  Subclass").

3       68.    A class action is appropriate here because there exist ascertainable

4  classes and a well-defined community of interest in the questions of law and fact

5  involved.

6       69.    The classes are readily ascertainable from Defendants' records and the

7  records of the class members' mobile service providers.

8       70.    A class action is the superior method for adjudicating this controversy

9  because: a) the classes are so numerous that the joinder of all members is impracticable,

10  b) questions of law and fact common to the classes predominate over any question

11  affecting only individual class members, and c) the claims of the representative Plaintiffs

12  are typical of the claims of the classes, and the representative Plaintiffs will fairly and

13  adequately protect the interests of the classes.

14       71.    The common questions of law and fact include:

15         •   Whether Defendants violated the Telephone Consumer Protection

16             Act, 47 U.S.C. §227, by sending commercial text messages to

17             Plaintiffs and the other Text Receipt Class members without their

18             express consent;

19         •   Whether Defendants violated the equitable doctrine of money had

20             and received by enrolling Plaintiff O'Hanks and the other Enrollment

21             Class members in Subscription Plans without their knowledge or

22             authorization and then charging them $9.99 per month for the

23             enrollment;

24         •   Whether Defendants converted the money of Plaintiff O'Hanks and

25             other Enrollment Class members by enrolling them in Subscription

26             Plans without their authorization and consent and then taking $9.99

27             per month from them until they cancelled the Subscription Plan;

28         •   Whether Defendants engaged in an unfair, unlawful, and/or

KRONENBERG  ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

fraudulent business practice in violation of California Business and Professions Code section 17200 by enrolling Plaintiff O'Hanks and the California Enrollment Subclass members in Subscription Plans without their knowledge or authorization;

- Whether Defendants trespassed on the chattels of Plaintiff Fields and other Text Charge Class members by interfering with their use of their cell phones and causing them to incur charges for receiving text messages;

- Whether Defendants interfered with the contracts between Plaintiff Fields other Text Charge Class members on the one hand, and their mobile service providers on the other hand, by sending unsolicited text messages knowing that they would likely result in charges to the recipients.

72.     Plaintiffs can and will fairly and adequately represent and protect the interests of the classes because:

- All of the questions of law and fact regarding the liability of Defendants are common to the classes and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of Defendants as to all members of the classes;

- Without the representation provided by Plaintiffs, it is unlikely that any class member would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

- Plaintiffs have retained competent attorneys who are experienced both in the conduct of class actions and telecommunications law. Plaintiffs and their counsel have the necessary resources to litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    discharge those duties to obtain the best possible recovery for the

2    classes.

3                                **FIRST CLAIM FOR RELIEF**

4    **(Violation of Telephone Consumer Protection Act, 47 U.S.C. §227 on behalf of
     Plaintiffs and the Enrollment Class and the Text Receipt Class)**

5

6           73.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1

7    through 72.

8           74.    On information and belief, Defendants sent SMS texts to Plaintiffs and the

9    other members of the Text Receipt Class.

10          75.    On information and belief, Defendants sent SMS texts to Plaintiffs and the

11   other members of the Text Receipt Class using equipment that had the capacity to store

12   or to produce telephone numbers to be called, using a random sequential number

13   generator.

14          76.    The text messages sent to Plaintiffs and the other members of the Text

15   Receipt Class were calls within the meaning of the Telephone Consumer Protection Act.

16          77.    Neither Plaintiffs nor any other member of the Text Receipt Class provided

17   Defendants with prior express consent to receive the text messages.

18          78.    Defendants' sending of texts to Plaintiffs and the other members of the Text

19   Receipt Class violated 47 U.S.C. §227(b)(1)(A).

20          79.    As a result of Defendants' unlawful conduct, Plaintiffs and the other

21   members of the Text Receipt Class were harmed.

22                              **SECOND CLAIM FOR RELIEF**

23   **(Money Had and Received on behalf of Plaintiff O'Hanks and the Enrollment Class)**

24          80.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1

25   through 79.

26          81.    Defendants involuntarily enrolled Plaintiff O'Hanks and the other members

27   of the Enrollment Class in the Subscription Plans.

28   //

Case No.                              13                    **CLASS ACTION COMPLAINT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

82.    Once enrolled, Defendants charged Plaintiff O'Hanks and the other members of the Enrollment Class $9.99 per month until they cancelled the Subscription Plans.

83.    Neither Plaintiff O'Hanks nor any other member of the Enrollment Class authorized their enrollment in the Subscription Plans or the $9.99 per month charged for the Subscription Plans.

84.    Thus, Defendants received money under circumstances that in equity and good conscience they should not be able to retain, because the fees obtained by Defendants for enrollment in the Subscription Plans belong to Plaintiff O'Hanks and the other members of the Enrollment Class.

85.    As a result of Defendants' misconduct, Plaintiff O'Hanks and the other members of the Enrollment Class have been harmed and are entitled to relief.

### THIRD CLAIM FOR RELIEF

### (Conversion on behalf of Plaintiff O'Hanks and the Enrollment Class)

86.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 79.

87.    Plaintiff O'Hanks and the other members of the Enrollment Class owned the $9.99 per month that was charged to them by Defendants during their involuntary enrollment in the Subscription Plans.

88.    Defendants disposed of the money of Plaintiff O'Hanks and the other members of the Enrollment Class in a manner that was inconsistent with their rights in this money.

89.    The money wrongfully taken by Defendants from Plaintiff O'Hanks and the other members of the Enrollment Class comprises a specific, identifiable sum.

90.    Defendants engaged in this misconduct with oppression, fraud, and malice.

91.    As a result of Defendants' misconduct, Plaintiff O'Hanks and the other members of the Enrollment Class have suffered damages.

//

Case No.                              14                    **CLASS ACTION COMPLAINT**

**FOURTH CLAIM FOR RELIEF**

**(Violation of California Business & Professions Code section 17200 on behalf of Plaintiff O'Hanks and the California Enrollment Subclass)**

92.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 79.

93.    Defendants involuntarily enrolled Plaintiff O'Hanks and the other members of the California Enrollment Subclass in Subscription Plans.

94.    Plaintiff O'Hanks and the other members of the California Enrollment Subclass never knew about or consented to enrolling in the Subscription Plans.

95.    Once enrolled, Defendants charged Plaintiff O'Hanks and the other members of the California Enrollment Subclass $9.99 per month until they cancelled the Subscription Plans.

96.    Defendants' above-described misconduct is a fraudulent business practice, as that term is used in Business and Professions Code section 17200, because a reasonable person would have been deceived by the representations and material omissions by Defendants, and would have been wrongfully charged as a result of Defendants' involuntary enrollment of consumers in the Subscription Plans.

97.    Defendants' above-described misconduct is an unfair business practice, as that term is used in Business and Professions Code section 17200, because Defendants' conduct offends established public policies and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

98.    Defendants' above-described misconduct is an unlawful business practice, as that term is used in Business and Professions Code section 17200, because Defendants' conduct violates 47 U.S.C. §227, Business and Professions Code section 17602, 47 C.F.R. §64.3100, and Public Utilities Code section 2890.

99.    Defendants' misconduct is an unlawful business practice in violation of 47 U.S.C. §227 because on information and belief, Defendants sent SMS texts to Plaintiffs and the other members of the California Enrollment Subclass without their express

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    consent, using equipment that had the capacity to store or to produce telephone numbers

2    to be called, using a random sequential number generator.

3         100.   Defendants' misconduct is an unlawful business practice in violation of

4    Business and Professions Code section 17602 because on information and belief

5    Defendants made an automatic renewal and/or continuous service offer to Plaintiff

6    O'Hanks and the other members of the California Enrollment Subclass and: a) failed to

7    present the terms of the offer in a clear and conspicuous manner before the Subscription

8    Plan agreement was fulfilled, b) charged the accounts of Plaintiff O'Hanks and the other

9    California Enrollment Subclass members without first obtaining their affirmative consent,

10   and c) failed to provide an acknowledgement of the purchase of the Subscription Plans

11   with the terms, cancellation policy, and information regarding how to cancel in a manner

12   that was capable of being retained by a consumer.

13        101.   Defendants' misconduct is an unlawful business practice in violation of 47

14   C.F.R. §64.3100 because on information and belief, Defendants initiated mobile service

15   commercial messages without qualifying for any of the exceptions outlined in the

16   regulation.

17        102.   Defendants' misconduct is an unlawful business practice in violation of

18   Public Utilities Code section 2890 because on information and belief Defendants caused

19   the cellular telephone bills for Plaintiff O'Hanks and the other California Enrollment

20   Subclass members to contain charges for products and services other than what Plaintiff

21   O'Hanks and the other California Enrollment Subclass members had authorized.

22        103.   By carrying out the above-described misconduct, Defendants engaged in

23   unlawful, unfair, and fraudulent business practices in violation of California Business and

24   Professions Code section 17200.

25        104.   As a result of Defendants' misconduct, Plaintiff O'Hanks and the other

26   California Enrollment Subclass members were harmed.

27   //

28   //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

## FIFTH CLAIM FOR RELIEF

### (Trespass to Chattels on behalf of Plaintiff Fields and the Text Charge Class)

105.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 79.

106.  Plaintiff Fields and the other members of the Text Charge Class possess interests in their cell phones as personal property.

107.  On information and belief, Defendants interfered with the use of the cell phones of Plaintiff Fields and the other members of the Text Charge Class by sending unsolicited text messages to their phones.

108.  Plaintiff Fields and the other members of the Text Charge Class received these text messages on their cell phones.

109.  Plaintiff Fields and the other members of the Text Charge Class were charged for receiving these text messages on their cell phones.

110.  Defendants' sending of text messages to mobile phones constituted a use of and interference with those mobile phones.

111.  Defendants' interference resulted in unauthorized charges on Plaintiff Fields and the other members of the Text Charge Class, and thereby interfered with their use of their cell phones.

112.  Defendants engaged in this misconduct with oppression, fraud, and malice.

## SIXTH CLAIM FOR RELIEF

### (Intentional Interference with a Contract on behalf of Plaintiff Fields and the Text Charge Class)

113.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 79.

114.  Plaintiff Fields and the other members of the Text Charge Class have valid contracts with mobile service providers.

115.  On information and belief, Defendants sent Plaintiff Fields and the other members of the Text Charge Class unsolicited text messages.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

116.   Plaintiff Fields and the other members of the Text Charge Class were charged for receiving these text messages on their cell phones.

117.   On information and belief, at the time Defendants sent these unsolicited text messages, Defendants knew that Plaintiff Fields and the other members of the Text Charge Class had contracts with mobile service providers.

118.   Defendants knew that these contracts likely provided that Plaintiff Fields and the other members of the Text Charge Class would be charged for receiving text messages.

119.   On information and belief, Defendants sent Plaintiff Fields and the other members of the Text Charge Class unsolicited text messages intentionally and without any justification, knowing that the texts would likely interfere with the contracts by imposing unauthorized fees.

120.   Plaintiff Fields and the other members of the Text Charge Class incurred fees by their mobile service providers in receiving Defendants' text messages.   These fees constituted an actual interference or disruption in the relationship between Fields and the other members of the Text Charge Class on the one hand and their mobile service providers on the other hand.

121.   Defendants engaged in this misconduct with oppression, fraud, and malice.

122.   As a result of Defendants' interference, Plaintiff Fields and the other members of the Text Charge Class were harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

1.   That the Court enter a judgment finding that Defendants have:

    a.  Violated the Telephone Consumer Protection Act, 47 U.S.C. §227 as to the members of the Text Receipt Class;

    b.  Violated the equitable doctrine of Money Had and Received as to the members of the Enrollment Class;

    c.  Committed Conversion as to the members of the Enrollment Class;

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

d. Violated California Business and Professions Code section 17200 as to the members of the California Enrollment Subclass;

e. Trespassed on the chattels of the members of the Text Charge Class;

f. Interfered with the contracts of the Text Charge Class.

2. That the Court award damages and monetary relief as follows:

a. The greater of Plaintiffs' and the other members of the Text Receipt Class' actual monetary loss or $500 for each violation of the Telephone Consumer Protection Act;

b. Damages in an amount to be determined at trial in the form of restitution of the money wrongfully charged to Plaintiff O'Hanks and the other members of the Enrollment Class under the equitable doctrine of Money Had and Received;

c. Compensatory damages in an amount to be determined at trial for Defendants' conversion of the money of Plaintiff O'Hanks and the other members of the Enrollment Class;

d. Damages in an amount to be determined at trial in the form of restitution of the money wrongfully charged to Plaintiffs O'Hanks and the other members of the California Enrollment Subclass under California Business and Professions Code section 17200;

e. Compensatory damages in an amount to be determined at trial for Defendants' trespass to chattels of Plaintiff Fields and the other members of the Text Charge Class;

f. Compensatory damages in an amount to be determined at trial for Defendants' interference with the contracts of Plaintiff Fields and the other members of the Text Charge Class;

g. Exemplary damages pursuant to California Civil Code §3294;

h. Treble damages under the Telephone Consumer Protection Act;

i. Statutory prejudgment interest;

Case No.                                                    19                    **CLASS ACTION COMPLAINT**

1          j.     Plaintiffs' costs.

2     3.     Such other relief that the Court determines is just and proper.

3

4  Respectfully Submitted,

5  DATED:  October 4, 2012

          KRONENBERGER ROSENFELD, LLP

6

7  By: _____

8          Jeffrey M. Rosenfeld

9  Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## REQUEST FOR JURY TRIAL

2   Plaintiffs hereby demand a trial of this action by jury.

3

4   DATED:  October 4, 2012                KRONENBERGER ROSENFELD, LLP

5

6                                          By: _____

7                                              Jeffrey M. Rosenfeld

8                                          Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

Case No.                         21                  **CLASS ACTION COMPLAINT**