1  Annette M. McGarry, No. 159621
   **McGARRY & McGARRY, LLC**
2  120 North LaSalle Street, Suite 1100
   Chicago, IL 60602
3  Telephone: 312.345.4600
   Facsimile:      312.345.4601
4  Email:          amm@mcgarryllc.com

5  Matthew F. Miller, No. 172661
   Troy M. Yoshino, No. 214352
6  Eric J. Knapp, No. 197850
   **CARROLL, BURDICK & McDONOUGH** LLP
7  Attorneys at Law
   44 Montgomery Street, Suite 400
8  San Francisco, CA  94104
   Telephone:      415.989.5900
9  Facsimile:      415.989.0932
   Email:          mmiller@cbmlaw.com
10
   Attorneys for Defendant
11 MBLOX, INC.

12                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
13

14 EDWARD FIELDS, AN INDIVIDUAL,              **CLASS ACTION**
   CATHIE O'HANKS, AN INDIVIDUAL,
15 ERIK KRISTIANSON, AN INDIVIDUAL,           **CASE NO. 3:12-CV-05160-WHA**
   DAVID HANSON, AN INDIVIDUAL,
16 RICHARD PARMENTIER, AN                     **HEARING DATE: JULY 11, 2013**
   INDIVIDUAL, KIMBERLY BREWSTER, AN          **TIME: 8:00 A.M.**
17 INDIVIDUAL, KEVIN BREWSTER, AN             **COURTROOM: 8, 19TH FLOOR**
   INDIVIDUAL, AND KRISTIAN KUNDER,           **JUDGE:  HONORABLE WILLIAM ALSUP**
18 AN INDIVIDUAL, INDIVIDUALLY AND ON
   BEHALF OF A CLASS OF SIMILARLY SITUATED
19 PERSONS,
                                              **MBLOX, INC.'S MOTION FOR SUMMARY**
20             PLAINTIFFS,                    **JUDGMENT**

21        V.

22 WISE MEDIA, LLC, A GEORGIA LIMITED
   LIABILITY COMPANY, MOBILE
23 MESSENGER AMERICAS, INC., A
   DELAWARE CORPORATION, MBLOX,
24 INC., A DELAWARE CORPORATION,
   MOTRICITY, INC., A DELAWARE
25 CORPORATION, AND DOES 1 - 10,
   INCLUSIVE,
26
               DEFENDANTS.
27

28

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on July 11, 2013, at 8:00 a.m., or as soon thereafter as this motion may be heard in the above-referenced court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 8, 19th Floor, Defendant mBlox, Inc. ("mBlox") will move for entry of summary judgment in its favor on the First Amended Class Action Complaint ("FAC") filed by plaintiffs Edward Fields, Cathie O'Hanks, Erik Kristianson, Jacqueline P. Anderson, David Hanson, Richard Parmentier, Kimberly Brewster, Kevin Brewster, and Kristian Kunder ("Plaintiffs"). mBlox's motion is made pursuant to Federal Rule of Civil Procedure 56, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Steven Rangel and Steven Love, and upon such other matters as may be presented to the Court at the time of hearing or otherwise.

### STATEMENT OF RELIEF REQUESTED

mBlox seeks an order, pursuant to Federal Rule of Civil Procedure 56, granting summary judgment in its favor on Plaintiffs' Second, Third, Fourth, Seventh and Eighth Claims for Relief.

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Plaintiffs can establish causes of action against mBlox for money had and received, conversion, violation of California Business & Professions Code § 17200, unjust enrichment or negligence.

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

3

### I.   INTRODUCTION

4

5

The Plaintiffs' First Amended Class Action Complaint alleges that they have been

6
damaged by the placement of unauthorized charges on their cellular telephone bills, a practice

7
known as "cramming." According to the Plaintiffs, they were enrolled, without their consent, in a

8
short message service ("SMS") text subscription plan provided by defendant Wise Media LLC

9
("Wise Media"), and were charged $9.99 per month for the plan. The Plaintiffs' allegations

10
against mBlox are purposefully vague; rather than identifying any allegedly wrongful conduct on

11
mBlox's part, Plaintiffs simply lump mBlox in with allegations against "Defendants" generally.

12
The basis of the Plaintiffs' complaint is their bare allegation that "Defendants" enrolled them in

13
Wise Media's text subscription plans without their knowledge and consent.  As to mBlox, that

14
allegation is flat wrong.

15
The Plaintiffs' five claims against mBlox fail to state legally cognizable claims, and

16
therefore fail as a matter of law. Furthermore, because the claims are based on the mistaken

17
premise that mBlox enrolls wireless users in text subscription plans, they fail as a matter of

18
undisputed fact.

19

20

### II.   FACTUAL BACKGROUND

21
mBlox is an "aggregator," acting as a passive conduit of mobile content and a billing

22
intermediary between content providers and wireless carriers such as T-Mobile, Sprint, Verizon,

23
and AT&T.   (Declaration of Steven Rangel in Support of mBlox's Motion for Summary

24
Judgment ("Rangel Dec."), ¶ 2.) mBlox does not generate its own content; instead, it acts solely

25
as a pass-through network for content and a billing intermediary. (*Id.*)

26

27
As a content provider, Wise Media provides mobile content services, such as premium

28
text messages, to wireless users. (*Id.*) Content providers engage in two-way SMS communication

---

with wireless users using a "short code," which is a five- or six-digit number used to address SMS messages to wireless devices. Content providers may provide value-added services, known as Premium SMS or "PSMS," such as television program voting, charity donation programs and other mobile services. (*Id.*, ¶ 3.) Because Wise Media and mBlox do not have an exclusive arrangement, Wise Media may use other aggregators in addition to mBlox. (*Id.*)

The cost of SMS communication between content providers and participating wireless users can be borne by the content provider or the wireless user. In Wise Media's case, a wireless user purchasing content was charged by his or her wireless carrier; the wireless carrier remitted a portion of the purchase price to mBlox, which passed the payment, net of mBlox's minimal fee, on to the content provider. (*Id.*, ¶ 4.)

Wireless carriers have adopted industry standards, such as the Mobile Marketing Association Global Code of Conduct, that require content providers to obtain an explicit opt-in from the wireless user for mobile messaging programs. (*Id.*, ¶ 5, Exhibit 1.) Accordingly, mBlox's service agreements with content providers require compliance with Service Provider and Regulator requirements ("SPRR") and Mobile Marketing Association guidelines, in addition to all applicable laws and regulations. (*Id.*)

On or about October 19, 2011, mBlox and Wise Media entered into a written Master Services Agreement ("Agreement"). (Rangel Dec., ¶ 6.) The Agreement provided, among other things:

> 2.3  Customer [Wise Media] acknowledges and agrees that, although mBlox has control over its Platform, mBlox does not have any direct or indirect control over, and therefore shall have no responsibility for, any Customer Content, mobile networks, the Service Providers, or the acts or omissions of any End Users or Customer Parties.

(*Id.*) The Agreement prohibited Wise Media from sending unsolicited messages, and required that Wise Media comply with the SPRR and Mobile Marketing Association standards, as well as other applicable laws and regulations. (*Id.*, ¶¶ 6-7.)

For mBlox's services as a pass-through network and billing intermediary, Wise Media was required to pay to mBlox certain set monthly fees and a per-message fee. (Declaration of Steven Love in Support of mBlox's Motion for Summary Judgment("Love Dec.", ¶ 3.)

It is entirely the content provider, and not mBlox, that determines which wireless users will receive an SMS or PSMS message from the content provider. (Rangel Dec., ¶ 8.) Similarly, at the time the complained-of messages were sent, mBlox had no involvement in the process by which a wireless user enrolled or subscribed to receive premium content from Wise Media.[1] mBlox did not host the webpages that a wireless user would use to input the information necessary to enroll in a Wise Media program, and thus had no way of determining if a wireless user was validly enrolled in a Wise Media program. (*Id.*)

Though a wireless user may occasionally contact mBlox with a question concerning a bill, mBlox does not have the ability to monitor complaints by wireless users[2]. Instead, mBlox must rely on the wireless carrier, which has a direct relationship with the wireless user, to notify mBlox of potential issues with a particular program. (*Id.*, ¶ 9.) In the case of Wise Media, mBlox acted immediately to suspend the Wise Media program at issue when notified by a wireless carrier of concerns with the program. (*Id.*)

---

[1] That process may remain a mystery, at least for the time being. On April 19, 2013, the United States District Court for the Northern District of Georgia entered an order freezing Wise Media's assets, appointing a receiver for the company, and enjoining continuation of actions against it. (*Federal Trade Comm'n v. Wise Media, LLC, et al.*, No. 1:13-cv-1234-WSD; Dkt. No. 73)

[2] The FAC contains no allegations that any Plaintiff contacted mBlox concerning any complaint.

## III. ARGUMENT

Summary judgment is dictated where the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). That is the case here.

The gist of the Plaintiffs' claims is that they were enrolled in Wise Media subscription plans without their knowledge or consent. (*See* FAC ¶¶ 4, 46, 47, 118, 128, 134, 140, 171, 179.) Plaintiffs barely mention mBlox in their complaint, preferring instead to allege misconduct against "Defendants" generally. This is impermissibly vague, in violation of Rule 8. Fed. R. Civ. P. 8; *Owens v. Bank of America, N.A.*, No. 11–cv–4580–YGR, 2012 WL 5340577 *5 (N.D. Cal., Oct. 25, 2012)(lumping all defendants together without specifying the basis for their liability violates the notice pleading requirements of Rule 8).

The defects in the Plaintiffs' claims against mBlox cannot be cured by mere amendment, because the fact upon which their claims are predicated – that mBlox enrolled the Plaintiffs in Wise Media subscription plans – is simply untrue. It is undisputed that mBlox did not determine which wireless users received an SMS or PSMS message from Wise Media; that was determined by Wise Media. (Rangel Dec., ¶ 8.) Indeed, the Plaintiffs repeatedly allege that it was Wise Media that sent them unsolicited text messages. (FAC, ¶¶ 41, 42, 121, 122, 146, 154, 162, 164, 178.) It is undisputed that mBlox had no control over the content of text messages generated by Wise Media. (Rangel Dec., ¶ 6.) It is undisputed that mBlox did not control, or even participate in, the process by which wireless users subscribed to Wise Media's programs. mBlox does not host the websites at which a wireless user enrolls in a Wise Media program (*Id.*, ¶ 8), and the Plaintiffs concede that those websites are owned and operated by Wise Media. (FAC, ¶ 37) Accordingly, mBlox had no way of determining whether a wireless user was even enrolled in a

1   Wise Media plan, much less how that enrollment occurred. (*See* Rangel Dec., ¶ 8) mBlox has no

2   part in the conduct of which the Plaintiffs complain.

3       Each of the claims asserted against mBlox is legally insufficient. When the core fact upon

4   which the Plaintiffs rely is exposed as untrue, each of their claims is irreparably defective, as a

5   matter of fact as well as law. mBlox is entitled to judgment in its favor on all claims asserted

6

7   against it.

8   **A. PLAINTIFFS CANNOT ESTABLISH A CLAIM FOR MONEY HAD AND RECEIVED**

9       The Plaintiffs' Second Claim for Relief purports to assert a claim for "money had and

10  received" and is based on the same factual allegations underlying their other claims against

11  mBlox. (*See* FAC, ¶¶ 127, 128 ("Defendants involuntarily enrolled Plaintiffs...in the Subscription

12  Plans")133, 139, 170, 175.) When a common count such as money had and received is asserted as

13  an alternative claim, seeking the same recovery demanded in a specific cause of action based on

14

15  the same facts, the common count may be dismissed if the more specific cause of action is

16  dismissed. *Dunkel v. eBay Inc.*, No. 12-CV-01452-EJD, 2013 WL 415584 *11 (N.D. Cal., Jan.

17  31, 2013)(*citing McBride v. Boughton,* 123 Cal. App. 4th 379, 394 – 95, 20 Cal. Rptr. 3d 115 (

18  Cal. App. 2004)). Here, Plaintiffs' claim for "money had and received" is simply a restatement of

19

20  their other claims and demands the same compensatory damages. Because each of the other

21  claims against mBlox is fatally defective, the Plaintiffs' claim for "money had and received" must

22  be dismissed as well.

23  **B. PLAINTIFFS CANNOT ESTABLISH A CLAIM FOR CONVERSION**

24

25      The Plaintiffs' Third Claim for Relief alleges conversion by "Defendants." To establish a

26  claim for conversion, the Plaintiffs must prove: (1) their ownership or right to possession of the

27  property at the time of the conversion; (2) the defendant's conversion by a wrongful act or

28  disposition of property rights; and (3) damages. *Oakdale Village Grp. v. Fong,* 43 Cal. App. 4th

1   539, 543-44, 50 Cal. Rptr. 2d 810 (1996). The Plaintiffs claim that they were charged $9.99 per

2   month as a result of their enrollment in Wise Media subscription plans, and that amount was

3   therefore "converted." Their claim fails on virtually every level.

4       First, money cannot be the subject of an action for conversion unless a specific sum

5   capable of identification is involved. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457,

6   1491–92, 49 Cal. Rptr. 3d 227 (2006). Accordingly, an action for conversion of money typically

7   involves misappropriation or commingling of specific funds, such as where there is a special

8   relationship between the parties creating a duty on the part of the defendant to retain or apply

9   funds on the plaintiff's behalf. *Williamson v. Reinalt-Thomas Corp.*, No. 11–CV–03548–LHK,

10  2012 WL 1438812 *4 (N.D. Cal., Apr. 25, 2012)(collecting cases). Here, the Plaintiffs claim no

11  special relationship – or any relationship at all - between the Plaintiffs and mBlox that would give

12  rise to a duty on mBlox's part to hold money for their benefit. Therefore, they cannot maintain a

13  claim for conversion of money.

14      Furthermore, the essence of the Plaintiffs' conversion claim is that they were overcharged

15  on their cellular telephone bills. Overcharging cannot be the basis for a cause of action for

16  conversion. *Id.* *5; *McKell,* 142 Cal. App. 4th at 1491–92, 49 Cal. Rptr. 3d 227 (no authority for

17  the proposition that a conversion claim may be based on an overcharge); *Gutierrez v.*

18  *Wells Fargo*, 622 F. Supp. 2d 946, 956 ( N.D. Cal. 2009)("Essentially, plaintiffs challenge Wells

19  Fargo practices that lead to it taking excessive overdraft fees from their accounts or, in other

20  words, they complain about overcharging. As such, they fail to state a claim of conversion.") Like

21  the plaintiffs in *Williamson*, *McKell* and *Gutierrez*, the Plaintiffs here cannot establish a claim for

22  conversion.

23

24

25

26

27

28

## C. mBLOX'S CONDUCT DOES NOT VIOLATE CALIFORNIA'S UNFAIR COMPETITION LAW

The Plaintiffs' Fourth Claim for Relief purports to assert a violation of California Business & Professions Code § 17200 ("UCL"). The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.,* 590 F.3d 955, 959 (9th Cir.2009).

"Unlawful" practices are "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Dunkel,* 2013 WL 415584 *10 (*quoting Saunders v.Super. Ct.,* 27 Cal. App. 4th 832, 838, 33 Cal. Rptr. 2d 438 (1999)). Here, Plaintiffs claim that "Defendants" have violated Business & Professions Code § 17602 and Public Utilities Code § 2890.[3]

According to the Plaintiffs, "Defendants" have violated Business & Professions Code § 17602 by making "an automatic renewal and/or continuous service offer" to Plaintiffs and the California Enrollment Subclass that failed to meet the requirements of the statute. (FAC ¶ 147.) It is undisputed that mBlox did not make such an offer. mBlox is merely a passive conduit for text messages, for which Wise Media paid a monthly fee. (Rangel Dec., ¶ 2; Love Dec., ¶ 3.) mBlox does not generate or sell its own content. (Rangel Dec., ¶ 2.) mBlox has no control over the content of the text messages that pass through its platform. (*Id.,* ¶ 6.) mBlox does not determine which wireless users will receive a text message or premium content or which users, if any, are "automatically renewed" or offered a "continuous service." (*Id.,* ¶ 8.) mBlox had no involvement in the enrollment process. (*Id.*) Nothing mBlox does could violate § 17602.

Nor does mBlox's conduct violate Public Utilities Code § 2890. Again, as with their other claims, the Plaintiffs merely allege that unspecified "Defendants" caused their wireless bills to

---

[3] The Plaintiffs also allege that "Defendants" have violated 47 U.S.C. § 227, though that allegation appears to relate only to Wise Media. (FAC ¶ 145-146)

include unauthorized charges. (FAC ¶ 147.) Elsewhere in their complaint, however, Plaintiffs concede that the allegedly unauthorized charges that appeared on their bills from their wireless carriers were generated by Wise Media. (FAC ¶¶ 59, 82, 88, 103, 110.) mBlox did not bill the Plaintiffs for unauthorized services; it is merely a pass-through between wireless carriers and content providers. (Rangel Dec., ¶ 2.)

Because the Plaintiffs cannot establish any of their remaining claims against mBlox, they cannot rely on them as a predicate for the "unlawful" prong of a UCL claim. *Dunkel*, 2013 WL 415584 *11.

Nor can the Plaintiffs rely on the "fraudulent" prong of the UCL. To do so, a plaintiff must allege "the who, what, when, where, and how" of the alleged fraudulent conduct; additionally, a plaintiff must allege the existence of a duty to disclose and the plaintiff's reliance. *Dunkel*, 2013 WL 415584 *11. Although the Plaintiffs allege that "a reasonable person would have been deceived by the representations and material omissions by Defendants, and would have been wrongfully charged as a result of Defendants' involuntary enrollment of consumers in the Subscription Plans" (FAC ¶ 143), they have identified no representations or omissions made by mBlox, no duty to disclose on mBlox's part, or their reliance on any conduct by mBlox. Indeed, they allege no contact with mBlox whatsoever, and it is undisputed that mBlox had no involvement in the enrollment process. The Plaintiffs cannot establish any fraudulent conduct by mBlox that would support their UCL claim.

Finally, the Plaintiffs assert, without elaboration, that unspecified "Defendants' conduct offends established public policies and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers." (FAC ¶ 144.) The core of the Plaintiffs' complaint is that they were enrolled by Wise Media in Wise Media subscription plans without their consent. mBlox was merely a passive conduit for text messages and billing information, and had no role in

the enrollment process. mBlox is no more immoral, unethical, oppressive or unscrupulous than the United States Postal Service, which, for the price of a stamp, unwittingly delivers an unwanted piece of mail. The Plaintiffs have no UCL claim against mBlox.

### D. UNJUST ENRICHMENT IS NOT A RECOGNIZED CAUSE OF ACTION

The Plaintiffs' Seventh Claim for Relief alleges that "Defendants" were unjustly enriched by the $9.99 monthly charges for the Wise Media subscription plans. (FAC ¶¶ 173-174.)   An independent cause of action for unjust enrichment does not exist in California. *Dunkel*, 2013 WL 415584 *11 (collecting cases); *Williamson*, 2012 WL 1438812 *5 (collecting cases); *McKell*, 142 Cal. App. 4th at 1490, 49 Cal. Rptr. 3d 227. Instead, "unjust enrichment" is shorthand for a claim of restitution under some theory. *McBride v. Boughton*, 123 Cal. App. 4th  at 387; *Williamson*, 2012 WL 1438812 *5.   However, here mBlox was a pass-through between content providers and wireless carriers, for which it charged Wise Media, and not wireless users, a fee. The Plaintiffs cannot demonstrate how they could possibly be entitled to restitution of any fees paid by Wise Media to mBlox. The Plaintiffs' unjust enrichment claim must be dismissed.

### E. PLAINTIFFS CANNOT ESTABLISH A CAUSE OF ACTION FOR NEGLIGENCE

The Plaintiffs' Eighth Claim for Relief alleges that "Defendants" were negligent in enrolling the Plaintiffs in Wise Media subscription plans without their knowledge or consent. According to the Plaintiffs, "A person exercising reasonable care under the circumstances would not have …enrolled Plaintiffs and other members of the Enrollment Class in a Subscription Plan." (FAC, ¶ 180)

mBlox did not enroll the Plaintiffs or others in Wise Media subscription plans, or have any role whatsoever in Wise Media's enrollment process. By the Plaintiffs' own reasoning, therefore, mBlox exercised reasonable care.

1

Furthermore, under California law, a plaintiff may recover for negligence only where he

2

or she experiences physical injury to person or to property, and not for purely economic losses.

3

*Williamson*, 2012 WL 1438812 *14; *Chang Bee Yang v. Sun Trust Mortg ., Inc.*, No. 1:10–CV–

4

01541 AWI, 2011 WL 902108 *7 (E.D. Cal., Mar. 15, 2011). Here, the Plaintiffs claim purely

5

monetary loss. Therefore, their negligence claim is barred by the economic loss rule.

6

7

**IV.   CONCLUSION**

8

Each of the Plaintiffs' claims turns on the allegation that they were involuntarily enrolled

9

in Wise Media subscription plans. mBlox did not enroll them in the plans, and had no role in the

10

enrollment process. Accordingly, mBlox is entitled to summary judgment in its favor.

11

12

Respectfully submitted,

13

14

McGARRY & McGARRY, LLC

15

By:  /s/ Annette M. McGarry

16

Annette M. McGarry

17

Attorneys for mBlox, Inc.

18

19

20

21

22

23

24

25

26

27

28