**KRONENBERGER ROSENFELD, LLP**

Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

**BAILEY & GLASSER LLP**

John Roddy (admitted *pro hac vice*)
125 Summer Street, Suite 1030
Boston MA 02110
Telephone:  (617) 439-6730
Facsimile:  (617) 951-3954
jroddy@baileyglasser.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDWARD FIELDS**, *et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>**WISE MEDIA, LLC**, *et al.*,<br><br>        Defendants. | **CLASS ACTION**<br><br>Case No. 3:12-cv-05160-WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MBLOX, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      July 11, 2013<br>Time:      8:00 a.m.<br>Ctrm:     8, 19th Floor<br>Judge:    The Hon. William Alsup |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 2

   A.  Wise Media's Scam ...................................................................................... 2

   B.  The FTC's Lawsuit Against Wise Media ....................................................... 4

   C.  mBlox's Active Role in Wise Media's Scam ................................................. 4

ARGUMENT ............................................................................................................ 7

   A.  Legal Standard ........................................................................................... 7

   B.  Contrary to mBlox's argument, Plaintiffs do not need to establish a special
       relationship to state a claim for conversion of money ........................................ 8

   C.  mBlox was not a passive conduit, but actively participated in unlawful, unfair, and
       fraudulent business practices in violation of the UCL ...................................... 9

       1.  mBlox violated the unlawful prong of the UCL by materially contributing to
           violations of Public Utilities Code §2890 and Business and Professions Code
           §17602 ............................................................................................. 10

       2.  mBlox engaged in unfair conduct in violation of the UCL by immorally charging
           consumers without their knowledge or consent ............................................ 11

       3.  mBlox violated the UCL's fraudulent prong by failing to disclose the
           Subscription Plans to Plaintiffs ................................................................. 12

   D.  Contrary to mBlox's argument, California recognizes a cause of action for unjust
       enrichment ................................................................................................ 13

   E.  mBlox owed Plaintiffs a duty of care when it enrolled Plaintiffs in the Subscription
       Plans and charged them $9.99 per month for the Plans ..................................... 14

       1.  mBlox breached its duty of care by disregarding the fact that the Subscription
           Plans were a scam ................................................................................ 14

       2.  The Economic Loss Doctrine does not prevent Plaintiffs from recovering their
           losses because no contract existed between Plaintiffs and mBlox and because
           the relevant policy factors justify Plaintiffs' recovery ..................................... 15

       3.  Plaintiffs have stated a claim for money had and received where Plaintiffs'
           other claims survive mBlox's motion ......................................................... 17

CONCLUSION ....................................................................................................... 17

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

# **TABLE OF AUTHORITIES**

## **Cases**

*Amezcua v. Los Angeles Harley-Davidson*, 200 Cal. App. 4th 217 (2011) ..................... 14

*Appling v. Wachovia Mortgage, FSB*, 745 F. Supp. 2d 961 (N.D. Cal. 2010).................. 8

*Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439 (2013)......................................8, 17

*Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230 (2011)..................................... 12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163
   (1999) .................................................................................................................... 10-11

*Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal. 2012) ......................................... 11

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ................................. 11

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ............................................. 10

*F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333 (2008) ............................................................. 13

*Gutierrez v. Wells Fargo*, 622 F. Supp. 2d 946 (N.D. Cal. 2009) ....................................... 9

*In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159 (S.D. Cal. 2010)............................ 8

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................... 15

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) .............................................. 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942
   (S.D. Cal. 2012)......................................................................................................... 16

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)............................................................. 12

*Los Angeles Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383 (2012) ............... 8-9

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) ........................................................ 13

*McDonald v. Coldwell Banker,* 543 F.3d 498 (9th Cir. 2008)............................................ 11

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) ...................................... 9

*Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008 (E.D. Cal.
   2010) ............................................................................................................................ 8

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000) ... 7

*NuCal Foods, Inc. v. Quality Egg LLC*, -- F. Supp. 2d --, No. CIV S-10-3105-KJM, 2013
   WL 178243 (E.D. Cal. Jan. 16, 2013)........................................................................ 15

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

*Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218 (S.D. Cal. 2008) ..........8

*Peel v. BrooksAmerica Mortgage Corp.*, 788 F. Supp. 2d 1149 (C.D. Cal. 2011) ...........12

*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008)................................................13

*Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090 (N.D. Cal. 2008) ...............10

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) .............................15

*Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246 (2011) ...............................14

*Util. Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950 (2003)..............................17

*Walker v. Sonora Reg'l Med. Ctr.*, 202 Cal. App. 4th 948 (2012) ....................................14

**Federal Statutes and Other Authorities**

FEDERAL RULE OF CIVIL PROCEDURE 56(d) ..........................................................2

BUSINESS AND PROFESSIONS CODE SECTION 17200.....................................................*passim*

BUSINESS AND PROFESSIONS CODE SECTION 17602.................................................. 10-11

PUBLIC UTILITIES CODE §2890....................................................................... 10-11

Plaintiffs Edward Fields, Cathie O'Hanks, Erik Kristianson, Jacqueline P. Anderson, David Hanson, Richard Parmentier, Kimberly Brewster, Kevin Brewster, and Kristian Kunder, by and through their undersigned counsel, respectfully submit the following memorandum of points and authorities in opposition to Defendant mBlox, Inc. ("mBlox")'s Motion for Summary Judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In the First Amended Complaint ("FAC"), Plaintiffs allege that Defendant Wise Media, LLC ("Wise Media") enrolled Plaintiffs in subscription text plans without Plaintiffs' knowledge or consent. Then, Wise Media charged Plaintiffs $9.99 per month for the subscription plans—again, without Plaintiffs' knowledge or consent. The Federal Trade Commission has corroborated Plaintiffs' allegations. On April 16, 2013, the FTC filed a lawsuit against Wise Media, alleging that Wise Media and its principals "operate a scam in which they bill consumers for text message-based subscription services even though the consumers did not authorize any purchase of the services."

Defendant mBlox does not challenge Plaintiffs' allegations about Wise Media's scam. Moreover, mBlox concedes that it served as an aggregator for Wise Media. However, mBlox has moved for summary judgment, primarily arguing that it functioned only as a "passive conduit" for Wise Media, and thus had no way of knowing whether consumers authorized their enrollment in Wise Media's subscription plans. mBlox's guidelines and promotional materials contradict mBlox's claim. These documents show that mBlox involves itself in every aspect of its clients' SMS campaigns, from campaign design to enrollment to billing to audits. Thus, to the extent mBlox's motion is based on its supposedly "passive" role, the motion fails.

mBlox's remaining arguments also fail, as discussed below:

- Contrary to mBlox's argument, Plaintiffs do not need to establish a special relationship to state a claim for conversion of money.

//

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

- Contrary to mBlox's argument, mBlox engaged in unlawful, unfair, and fraudulent business practices in violation of the UCL when it actively participated in the operation of the Wise Media subscription plans.

- Contrary to mBlox's argument, California recognizes a cause of action for unjust enrichment.

- Contrary to mBlox's argument, mBlox breached its duty of care to Plaintiffs—and committed negligence—when it operated the Wise Media subscription plans while aware of the plans' fraudulent nature.

- Contrary to mBlox's argument, the Economic Loss Doctrine does not prevent Plaintiffs from seeking economic damages under a negligence theory where no contract existed between mBlox and Plaintiffs and where mBlox owed Plaintiffs a duty of care.

- Contrary to mBlox's argument, Plaintiffs' claim for money had and received is proper where mBlox received money, which belongs to Plaintiffs, and which in equity and good conscience should be returned to Plaintiffs.

Based on the foregoing, and as explained more fully herein, the Court should deny mBlox's motion for summary judgment.

However, if the Court believes that Plaintiffs have not presented sufficient evidence to raise a question of material fact, the Court should still deny mBlox's motion as premature under Federal Rule 56(d), and allow Plaintiffs the opportunity to conduct discovery about mBlox's knowledge of and involvement in Wise Media's misconduct. To that end, Plaintiffs have filed, concurrently with this opposition, a motion to defer mBlox's motion or deny it under Rule 56(d).

## BACKGROUND

### A. Wise Media's Scam

Wise Media owns and operates the Internet websites located at <lovegenietips.com>, <horoscopegenie.com>, <longlifelovetips.com>, <gossiprage.com>, <diettipz.com>, <lovetips4life.com>, and <luvswap.me> (the "Wise Media Websites").

(FAC ¶37.)  The Wise Media Websites offer Internet users the opportunity to enroll in subscription SMS text plans, where the enrollees receive flirting tips, horoscope updates, celebrity gossip, or weight loss advice for $9.99 per month (the "Subscription Plans"). (FAC ¶37.)

No person enrolled in the Subscription Plans voluntarily.  (FAC ¶39.)  Rather, the following process occurred:

- First, Wise Media obtained individuals' mobile phone numbers without their knowledge or consent.  (FAC ¶40.)

- Second, Wise Media sent an unsolicited SMS text message to these mobile phone numbers (the "Initial Text").  (FAC ¶41.)  As an example, the Initial Text for the LoveGenieTips Subscription Plan stated:

  > Lovegenietips Flirting Tips; 3msg/week for $9.99/m T&Cs: lovegenietips.com Msg&data rates may apply. Reply HELP for help, STOP to cancel. PIN **** (FAC ¶43.)

- Third, regardless of whether an individual responded to the Initial Text, in a manner of minutes, Wise Media enrolled that individual in one of the Subscription Plans without the person's knowledge or consent.  (FAC ¶46.)

- Finally, Wise Media billed the consumer $9.99 per month for the Subscription Plan until the consumer cancelled the service.  (FAC ¶47.)

Plaintiffs were all victims of this scam and were charged $9.99 per month, and in some cases additional fees for receiving the texts.  (FAC ¶¶52-110.)  (Declaration of Erik Kristianson in Support of Plaintiffs' Opposition to Defendant mBlox, Inc.'s Motion for Summary Judgment ("Kristianson Decl.") *passim*; Declaration of Kevin Brewster in Support of Plaintiffs' Opposition to Defendant mBlox, Inc.'s Motion for Summary Judgment ("Brewster Decl.") *passim*.)[1]

In its motion for summary judgment, mBlox does not dispute these facts.

---

[1] mBlox served as the aggregator for the texts received by Plaintiffs Brewster and Kristianson.  (Declaration of Jeffrey M. Rosenfeld in Support of Plaintiffs' Opposition to Defendant mBlox, Inc.'s Motion for Summary Judgment ("Rosenfeld Decl.") ¶23.)

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

**B. The FTC's Lawsuit Against Wise Media**

On April 16, 2013, the Federal Trade Commission filed a lawsuit against Wise Media. (Request for Judicial Notice in Support of Plaintiffs' Opposition to mBlox, Inc.'s Motion for Summary Judgment ("RJN") Ex. A.) The FTC alleged that Wise Media enrolled millions of consumers in the Subscription Plans without their knowledge or consent. (RJN Ex. A ¶14.) The FTC also alleged that the fraudulent nature of the Subscription Plans was apparent to those involved, including through the existence of massive refund rates and the banning of Wise Media by mobile carriers. (RJN Ex. A ¶¶20-21.)

**C. mBlox's Active Role in Wise Media's Scam**

mBlox acknowledges that it served as an aggregator for Wise Media, acting as an intermediary between Wise Media and wireless carriers. (Mot. at 3:4-6.) However, mBlox claims that it was in no way involved in Wise Media's scam because it served only as "a passive conduit" with "no way of determining if a wireless user was validly enrolled in a Wise Media program." (Mot. at 3:14-15, 7:17.) mBlox's own guidelines and promotional materials contradict its argument. These documents show that as a matter of practice, mBlox involves itself in all aspects of its clients' operations. Below is a brief summary of mBlox's involvement in its clients' SMS campaigns.

- **mBlox's Overall Management of Clients' Campaigns:** mBlox admits that it fully manages its clients' SMS campaigns, and in fact, that mBlox is a "partner" with each of its clients, managing the intricacies of dealing with mobile carriers. (Declaration of Jeffrey M. Rosenfeld in Support of Plaintiffs' Opposition to Defendant mBlox, Inc.'s Motion for Summary Judgment ("Rosenfeld Decl.") Exs. D, O at 3, P at 7.)

- **mBlox's Involvement in Campaign Creation:** mBlox admits that it works hand-in-hand with its clients to create new SMS campaigns. mBlox's Guide for Mobile Campaigns states:

    The [mBlox] US Campaign Administration Team reviews all client campaigns submitted through mOPT. This team reviews each

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

campaign against the Mobile Marketing Association Best Practices and the Supplemental Carrier Program Guidelines. They are also responsible for helping to shape campaign ideas based on previous experience implementing many other campaigns. (Rosenfeld Decl. Exs. J, P at 20.)

- **mBlox's Involvement in Campaign Certification:** After mBlox and its client create an SMS campaign, the campaign must be certified. (Rosenfeld Decl. Ex. P at 11.) Certification is the process by which all aspects of the campaign are tested by both mBlox and the carrier. (Rosenfeld Decl. Ex. P at 4.) In the certification phase, the mBlox Campaign Administrator Team submits the campaign to each selected wireless carrier. (Rosenfeld Decl. Ex. P at 7.) Additionally, the "mBlox Certification Engineer performs preliminary certification testing on the live short code" and "mBlox's Certification Team validates testing of any campaign from beginning to end after it has been approved and provisioned by the carriers." (Rosenfeld Decl. Ex. P at 11, 20.) Finally, "mBlox Certification Engineers are also responsible for communicating failure notices when testing doesn't succeed." (Rosenfeld Decl. Ex. P at 20.)

- **mBlox's Involvement in the Sending of Texts:** mBlox is actively involved in the sending of SMS messages between its clients and consumers. (Rosenfeld Decl. Exs. D, F, G.) "mBlox acts as an intermediary for enterprises using mobile messaging, providing tools and expertise, as well as managing delivery of bulk text messages." (Rosenfeld Decl. Ex. D.) mBlox states, "by working with us, you don't have to be concerned about the regulatory, technical and administrative requirements of different mobile carriers in different countries. We've got all this covered." (Rosenfeld Decl. Ex. G.) "As an inbound SMS provider, we can handle your end-to-end needs." (Rosenfeld Decl. Ex. F.)

- **mBlox's Involvement in Campaign Audits:** Once an SMS campaign has launched, a carrier may audit that campaign because of complaints received or as

part of its regular auditing practice. (Rosenfeld Decl. Exs. M at 3, P at 12.) mBlox is integrally involved in carrier audits. (Rosenfeld Decl. Exs. M at 4-9, P at 12, 20.) When a carrier decides to audit the SMS campaign of an mBlox client, mBlox's Compliance Team logs the audit and informs the client of the audit. (Rosenfeld Decl. Ex. P at 12.) mBlox then reviews the audit and tests its client's audit response. (Rosenfeld Decl. Exs. M at 5, P at 12.) If mBlox finds its client's audit response satisfactory, including through mBlox's own Audit Validation Testing, mBlox submits the response to the carrier. (Rosenfeld Decl. Exs. M at 5, 8-9, P at 12.) If mBlox is not satisfied with the response, the audit is escalated and the client must contact its mBlox Account Manager to discuss next steps. (Rosenfeld Decl. Ex. M at 9.) mBlox encourages its clients to use the mBlox Carrier Compliance Team as a resource in responding to audits, and mBlox prohibits its clients from communicating audit responses directly to the carriers. (Rosenfeld Decl. Exs. M at 9, P at 20.)

- **mBlox's Involvement in Billing, Refunds & Reversals:** mBlox provides its SMS clients with billing systems that allow them to "generate revenue quickly and easily." (Rosenfeld Decl. Ex. C.) mBlox is integrally involved in these billing processes, as several flow charts demonstrate. (Rosenfeld Decl. Exs. I at *passim*, Q at 9, R at 8-9.) As an example, the flow chart for two-phase subscription purchases shows that mBlox: a) receives the opt-ins texts from consumers, b) forwards those texts to its clients, c) creates purchase requests for the transactions and sends those purchase requests to the mobile carriers, and d) provides its clients with daily reports showing the number of successfully sent premium texts. (Rosenfeld Decl. Exs. I at 10-11, S at 7.) Different flow charts show mBlox's involvement in refunds, reversals, and revocations of subscription plans. (Rosenfeld Decl. Ex. I at 13-15.)

- **mBlox's Involvement in Consumer Complaints:** In its motion, mBlox concedes that consumers contact mBlox about charges appearing on their mobile phone bill.

PLAINTIFFS' OPP TO mBLOX'S MOTION FOR SUMMARY JUDGMENT

4818-8667-8290.1

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    (Mot. at 3:16-22.)   Additionally, mBlox learned of consumer complaints from

2    wireless carriers.  (Rosenfeld Decl. Ex. T.)

3        Thus, contrary to mBlox's arguments, these documents indicate that mBlox was

4    integrally involved in the Subscription Plans.  Even so, mBlox claims that it immediately

5    suspended Wise Media as a client when mBlox was notified by a wireless carrier of

6    concerns with the program.  (Mot. at 3:20-22.)  A letter from AT&T to mBlox casts doubt

7    on this claim.  (Rosenfeld Decl. ¶22 & Ex. T.)  This letter indicates that: a) AT&T—and

8    not mBlox—suspended several of Wise Media's short codes, b) there had been

9    "numerous complaints" about Wise Media, c) there had been unusually high refund rates

10   for Wise Media, and d) as a result of all of these factors, AT&T—and not mBlox—

11   terminated Wise Media's short codes and banned Wise Media from the AT&T network.

12   (Rosenfeld Decl. ¶22 & Ex. T.)

13                                    **ARGUMENT**

14   **A. Legal Standard**

15       A moving party without the ultimate burden of persuasion at trial (usually the

16   defendant), has both the initial burden of production and the ultimate burden of

17   persuasion on a motion for summary judgment.  *See Nissan Fire & Marine Ins. Co. v.*

18   *Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).   In order to carry

19   its burden of production, the moving party must either produce evidence negating an

20   essential element of the nonmoving party's claim or show that the nonmoving party does

21   not have enough evidence of an essential element to carry its ultimate burden of

22   persuasion at trial.  *See id.*  In order to carry its ultimate burden of persuasion on the

23   motion, the moving party must persuade the court that there is no genuine issue of

24   material fact.  *See id.*

25       If the moving party fails to carry its initial burden of production, the nonmoving

26   party has no obligation to produce anything, even if the nonmoving party would have the

27   ultimate burden of persuasion at trial.  *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at

28   1102.  If the moving party carries its burden of production, the nonmoving party must

produce enough evidence to create a genuine issue of material fact.  *See id.*  In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, all justifiable inferences are to be drawn in its favor.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

As explained below, mBlox has not met its burden of production or its burden of persuasion.  Thus, the Court should deny its motion for summary judgment.

**B. Contrary to mBlox's argument, Plaintiffs do not need to establish a special relationship to state a claim for conversion of money.**

To state a claim for conversion, a plaintiff must allege: a) ownership or right to possess the subject property; b) the defendant's conversion by a wrongful act or disposition of the property; and c) damages. *Appling v. Wachovia Mortgage, FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010). Money can be the subject of conversion if a specific sum capable of identification is involved, though it is not necessary for the plaintiff to earmark each bill or coin.  *See Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1452 (2013); *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010).

mBlox argues that a claim for conversion of money exists only when there is a special relationship between the plaintiff and the defendant.  (Mot. at 6:11-15.)  This is not correct, and mBlox's authority does set forth any such limitation.  Rather, California courts regularly recognize conversion claims for money where no special relationship exists.  *See, e.g.*, *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1180 (S.D. Cal. 2010) (refusing to dismiss conversion claim against Internet retailer who deceived plaintiffs into authorizing charges to their debit cards for membership in retailer's rewards program); *Natomas Gardens Inv. Grp., LLC*, 710 F. Supp. 2d at 1020 (refusing to dismiss conversion claim for money without ever mentioning any special relationship); *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008) (same). Moreover, conversion is a strict liability tort, where questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial.  *See Los Angeles Fed.*

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

*Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012). Thus, a defendant's relationship with the plaintiff is not material to whether the defendant converted the plaintiff's money.

mBlox also argues that Plaintiffs have not stated a conversion claim because overcharging cannot be the basis for a conversion claim. However, Plaintiffs have not alleged that Defendants overcharged them. Rather, Plaintiffs alleged that Defendants stole money from them to pay for bogus Subscription Plans that Plaintiffs had never heard of, let alone authorized. (Kristianson Decl. *passim*; Brewster Decl. *passim*.) This is not an overcharge. This is outright theft. mBlox's authority regarding overcharges is readily distinguishable. In *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006), the plaintiffs alleged that the defendant banks had overcharged them in connection with home loans that the plaintiffs had otherwise authorized. Similarly, in *Gutierrez v. Wells Fargo*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), the plaintiffs alleged that the defendant bank had overcharged them for accounts that the plaintiffs had otherwise authorized. In direct contrast to these cases, Plaintiffs did not authorize any aspect of the Subscription Plans or any charges associated with the Subscription Plans. (Kristianson Decl. *passim*; Brewster Decl. *passim*.) Thus, the wrongful charges to Plaintiffs resulted from outright theft—not from an overcharge.

Because mBlox wrongfully took specific sums of money from Plaintiffs, the Court should deny mBlox's motion as to Plaintiffs' conversion claim.

**C. mBlox was not a passive conduit, but actively participated in unlawful, unfair, and fraudulent business practices in violation of the UCL.**

Plaintiffs' evidence shows that mBlox is not the passive conduit it claims to be. Rather, mBlox actively violated all three prongs of Business and Professions Code section 17200 (the "UCL"). Specifically, mBlox engaged in unlawful, unfair, and fraudulent business practices that caused Plaintiffs to suffer injuries in fact and to lose money.

//

**PLAINTIFFS' OPP TO mBLOX'S MOTION FOR SUMMARY JUDGMENT**

**1. mBlox violated the unlawful prong of the UCL by materially contributing to violations of Public Utilities Code §2890 and Business and Professions Code §17602.**

An unlawful business practice under the UCL is an act or practice, committed pursuant to business activity, which is forbidden by law. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010). The UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Virtually any law—federal, state, or local—can serve as a predicate for an action under the UCL. *See Durell*, 183 Cal. App. 4th at 1361. Moreover, a defendant violates the UCL's unlawful prong where the defendant aids and abets a principal violator of the predicate statute. *See Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).

Public Utilities Code section 2890 prohibits the placement of unauthorized charges on telephone bills. mBlox argues that Plaintiffs cannot rely on section 2890 as a predicate because "mBlox did not bill the Plaintiffs for unauthorized services; it is merely a pass-through between wireless carriers and content providers." (Mot. at 8:3-6.) mBlox's documents contradict mBlox's supposedly passive role. These documents show that mBlox involves itself in all aspects of its clients' SMS campaigns, including enrollment, billing, refunds, and reversals. (Rosenfeld Decl. Exs. C-S.) Moreover, mBlox engaged in this conduct while aware of suspicious circumstances surrounding the Subscription Plans, including consumer complaints and excessive refund rates. (Rosenfeld Decl. ¶22 & Ex. T.) Thus, mBlox violated section 2890 by knowingly providing material assistance to Wise Media in placing unauthorized charges on Plaintiffs' phone bills.

mBlox also argues that Plaintiffs cannot rely on Business and Professions Code section 17602 as a predicate. Section 17602 prohibits a person from making a continuous service offer without conspicuously presenting the terms of the offer and without obtaining the consumer's affirmative consent. *See* Bus. & Prof. C. §17602.

1  mBlox argues that Plaintiffs cannot rely on section 17602 because mBlox "had no

2  involvement in the enrollment process." (Mot. at 7:24.)  mBlox's argument fails.  mBlox

3  involves itself in all aspects of the creation and operation of its clients' SMS campaigns,

4  including the design of the campaigns, the enrollment of consumers in the campaigns,

5  and any audits of the campaign.  (Rosenfeld Decl.  Exs. C-S.)  Moreover, mBlox admits

6  that it knew about suspicious circumstances surrounding the Subscription Plans where it

7  received consumer complaints and complaints from wireless carriers.  (Mot at 3:16-17;

8  Rosenfeld Decl. ¶22 & Ex. T.)  Under these circumstances, mBlox violated section 17602

9  by assisting Wise Media in enrolling consumers in the Subscription Plans without the

10 required disclosures or consent.

11     In summary, because Plaintiffs have shown that mBlox violated Public Utilities

12 Code section 2890 and Business and Professions Code section 17602, mBlox's motion

13 fails as to Plaintiffs' claim under the UCL's unlawful prong.

**2.  mBlox engaged in unfair conduct in violation of the UCL by immorally charging consumers without their knowledge or consent.**

16     Plaintiffs have alleged that mBlox violated the unfair prong of the UCL.  An unfair

17 business practice is one that either offends an established public policy or is immoral,

18 unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *See*

19 *McDonald v. Coldwell Banker,* 543 F.3d 498, 506 (9th Cir. 2008).  To test whether a

20 business practice is unfair, the court must weigh the utility of the defendant's conduct

21 against the gravity of the harm to the victim.  *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d

22 1017, 1028 (N.D. Cal. 2012).[2]

23 _____

24 [2] The proper definition of "unfair" conduct in consumer actions is currently in flux. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). In *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187, the court limited unfair conduct to conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition. However, California appellate courts have remained divided about whether the definition of "unfair" as set forth in *Cel–Tech* should apply to UCL actions brought by consumers. *See Davis*, 691 F.3d at 1170. Here, however, the distinction is immaterial, as mBlox's misconduct is "unfair" under either definition.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

mBlox argues that it did not engage in unfair conduct because mBlox "was merely a passive conduit for text messages and billing information, and had no role in the enrollment process." (Mot. at 8:28-9:1.) Not so. mBlox's documents show that mBlox involves itself in all aspects of the creation and operation of its clients' campaigns, including the design of the campaign, the certification of the campaign, the launch of the campaign, the sending of text messages on behalf of the campaign, the enrollment of consumers in the campaign, and any audits of the campaign. (Rosenfeld Decl. Exs. C-S.) By engaging in this conduct to operate the Subscription Plans, while disregarding the unjust and deceptive nature of the Subscription Plans, mBlox violated the UCL's unfair prong.

### 3. mBlox violated the UCL's fraudulent prong by failing to disclose the Subscription Plans to Plaintiffs.

Plaintiffs have alleged that mBlox violated the UCL's fraudulent prong by failing to disclose the enrollment of Plaintiffs in the Subscription Plans. A fraudulent business practice under the UCL is a business practice that is likely to deceive members of the public. *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 252-53 (2011). Such a fraudulent business practice may be based on a material omission, where the defendant was under a duty to disclose the omitted information. *See id.* at 253. A duty to disclose arises where the defendant has exclusive knowledge of material facts not known to the plaintiff. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Moreover, California courts recognize a claim against a defendant who aids and abets a fraudulent business practice where the defendant provides substantial assistance with knowledge of the fraud. *See Peel v. BrooksAmerica Mortgage Corp.*, 788 F. Supp. 2d 1149, 1161, 1164 (C.D. Cal. 2011).

mBlox argues that Plaintiffs have not stated a claim under the UCL's fraudulent prong because they have "identified no representations or omissions made by mBlox, no duty to disclose on mBlox's part, or their reliance on any conduct by mBlox." (Mot. at 8:17-19.) mBlox's argument fails on all fronts. First, Plaintiffs have shown that mBlox



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

provided material assistance in enrolling Plaintiffs in the Subscriptions Plans.  (Rosenfeld Decl. Exs. C-S.)   Second, mBlox enrolled Plaintiffs in the Subscription Plans while disregarding signs that the Subscription Plans were fraudulent.  (Rosenfeld Decl. Exs. I at 13-14, T.)  Third, a reasonable consumer would have been misled by mBlox's failure to disclose material information about the Subscription Plans—namely, that the consumer had been enrolled in the Subscription Plan and would be charged for the Subscription Plan.  Fourth, mBlox was under a duty to disclose this information because mBlox knew about these material facts while Plaintiffs did not.  (Kristianson Decl. *passim*; Brewster Decl. *passim*.)  Finally, had Plaintiffs known about the Subscription Plans, they would not have enrolled—or they would have immediately contacted their wireless carriers to cancel their involuntary enrollment.  (Kristianson Decl. *passim*; Brewster Decl. *passimS*.)

In summary, because mBlox enrolled Plaintiffs in the Subscription Plans without disclosing the Subscription Plans to Plaintiffs, mBlox violated the fraudulent prong of the UCL.

## D. Contrary to mBlox's argument, California recognizes a cause of action for unjust enrichment.

mBlox argues that California does not recognize a cause of action for unjust enrichment.  This is not correct. California courts have routinely recognized a cause of action for unjust enrichment. *See F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008) (recognizing cause of action for unjust enrichment, which may also be labeled as quasi-contract, quantum meruit, or restitution); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (setting forth elements for "unjust enrichment claim"); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (analyzing unjust enrichment claim under any possible basis for restitution).  To state a claim for unjust enrichment, a plaintiff must allege that the defendant received a benefit from the plaintiff and unjustly retained that benefit at the expense of the plaintiff. *See Peterson*, 164 Cal. App. 4th at 1593 (2008).

//

**PLAINTIFFS' OPP TO mBLOX'S MOTION FOR SUMMARY JUDGMENT**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

Here, Plaintiffs have alleged and shown that mBlox and Wise Media unjustly charged Plaintiffs $9.99 per month for the Subscription Plans. (FAC ¶¶47, 50; Kristianson Decl. *passim*; Brewster Decl. *passim*.) Moreover, mBlox has admitted that it received a portion of the revenue earned from the Subscription Plans. (Mot. 3:4-6.) Because Plaintiffs have alleged and shown that mBlox unjustly retained a portion of Plaintiffs' money, Plaintiffs have stated a claim for unjust enrichment and established that claim for purposes of defeating mBlox's summary judgment motion.

**E. mBlox owed Plaintiffs a duty of care when it enrolled Plaintiffs in the Subscription Plans and charged them $9.99 per month for the Plans.**

The elements of a claim for negligence are: a) a legal duty to use due care, b) a breach of such legal duty, and c) the breach is the proximate or legal cause of the resulting injury. *Walker v. Sonora Reg'l Med. Ctr.*, 202 Cal. App. 4th 948, 958 (2012). Every person is responsible for injuries caused by his or her lack of ordinary care. *See Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1251-52 (2011). Thus, as a general rule, a person has a duty to use due care to avoid injuring others, and may be held liable if his or her careless conduct injures others. *See Amezcua v. Los Angeles Harley-Davidson*, 200 Cal. App. 4th 217, 227-28 (2011).

**1. mBlox breached its duty of care by disregarding the fact that the Subscription Plans were a scam.**

mBlox concedes that it owed Plaintiffs a duty of care. However, mBlox argues that it fulfilled its duty of care because it did not "have any role whatsoever in Wise Media's enrollment process." (Mot. at 9:24:26.) Contrary to mBlox's contention, mBlox did not serve as a passive conduit for the Subscription Plans. Rather, mBlox involved itself in all stages of the Subscription Plans from campaign design to certification to launch to the sending of text messages to billing. (Rosenfeld Decl. Exs. C-S.) Without mBlox's material involvement, Wise Media would not have been able to operate the Subscription Plans. (Rosenfeld Decl. Exs. C-S.) Moreover, while serving in this capacity, mBlox learned of suspicious circumstances regarding the Subscription Plans, including a large number of refunds and reversals, numerous consumer complaints, and suspensions and

1  terminations by mobile services providers.  (Rosenfeld Decl. ¶22 & Ex. T.)  Disregarding

2  these circumstances, mBlox continued to operate the Subscription Plans, and enrolled

3  and billed Plaintiffs.  In engaging in this conduct, mBlox breached its duty of care to

4  Plaintiffs.

5  
6  **2.  The Economic Loss Doctrine does not prevent Plaintiffs from recovering their losses because no contract existed between Plaintiffs and mBlox and because the relevant policy factors justify Plaintiffs' recovery.**

7  mBlox argues that "under California law, a plaintiff may recover for negligence only

8  where he or she experiences physical injury to person or to property, and not for purely

9  economic losses."  (Mot. at 10:1-3.)  mBlox misstates the Economic Loss Doctrine.

10  mBlox is correct that in general, purely economic losses are not recoverable in

11  tort, so as to prevent the law of contract and the law of tort from dissolving into each

12  other.  *See NuCal Foods, Inc. v. Quality Egg LLC*, -- F. Supp. 2d --, No. CIV S-10-3105-

13  KJM, 2013 WL 178243, *3 (E.D. Cal. Jan. 16, 2013).  However, the Economic Loss

14  Doctrine only applies in the context of contract breaches, and even then, a plaintiff can

15  still recover in tort after a contract breach in three situations: a) when a product defect

16  causes damage to other property, b) when a defendant breaches a legal duty

17  independent of the contract, and c) if a "special relationship" existed between the parties.

18  *See id; see Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989-90 (2004).

19  Here, the second and third exceptions apply.

20  As an initial matter, there was no contract between mBlox/Wise Media and

21  Defendants, and thus, this is not a situation where Plaintiffs have "disappointed

22  expectations" based on a contractual promise.  *See In re iPhone Application Litig.*, 844 F.

23  Supp. 2d 1040, 1064 (N.D. Cal. 2012).  Rather, by enrolling Plaintiffs in the Subscription

24  Plans, while disregarding the fraudulent nature of the Plans, mBlox breached a duty of

25  care separate from any contract with Plaintiffs.  Thus, Plaintiffs can recover their

26  economic losses under a negligence theory as an exception to the Economic Loss

27  Doctrine.

28  //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

Second, a "special relationship" existed between mBlox and Plaintiffs sufficient to except them from the Economic Loss Doctrine. Courts looks at six factors to determine the existence of a special relationship: a) the extent to which the transaction was intended to affect the plaintiff; b) the foreseeability of harm to the plaintiff; c) the degree of certainty that the plaintiff suffered injury; d) the closeness of the connection between the defendant's conduct and the injury suffered; e) the moral blame attached to the defendant's conduct; and f) the policy of preventing future harm. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012). All of these factors weigh in favor of permitting Plaintiffs to recover their economic losses from mBlox.

- The transactions at issue were intended to affect each Plaintiff where mBlox enrolled each Plaintiff in a Subscription Plan, falsely representing that each Plaintiff had authorized the enrollment.

- It was entirely foreseeable that if mBlox enrolled Plaintiffs in the Subscription Plans without Plaintiffs' knowledge or consent, that Plaintiffs would be harmed.

- Plaintiffs suffered a definite injury (*i.e.* the loss of money).

- mBlox was closely linked to Plaintiffs' injury (*i.e.* mBlox materially assisted Wise Media in enrolling Plaintiffs in the Subscription Plans and charging Plaintiffs for the Subscription Plans).

- mBlox is morally blameworthy for its conduct (an aggregator cannot recklessly disregard overt evidence of fraudulent SMS campaigns while charging numerous consumers for those campaigns).

- A strong policy exists to prevent this type of harm (*i.e.* government authorities have commented on the significant harm that cramming imposes on consumers. *See, e.g.*, RJN Ex. A.)

Because all of these factors weigh against the application of the Economic Loss Doctrine, Plaintiffs are permitted to recover their losses from mBlox under a negligence theory.

//

**PLAINTIFFS' OPP TO mBLOX'S MOTION FOR SUMMARY JUDGMENT**

**3. Plaintiffs have stated a claim for money had and received where Plaintiffs' other claims survive mBlox's motion.**

To state a claim for money had and received, a plaintiff must allege that the defendant is indebted to the plaintiff for a certain sum of money—*i.e.* that the defendant received money, which belongs to the plaintiff, and which in equity and good conscience should be paid to the plaintiff. *See, Avidor*, 212 Cal. App. 4th at 1454. Moreover, a claim for money had and received can be based on money paid by the plaintiff to the defendant by mistake. *See Util. Audit Co. v. City of Los Angeles*, 112 Cal. App. 4th 950, 958 (2003). Here, Plaintiffs have established a claim for money had and received against mBlox because Plaintiffs have alleged that mBlox improperly billed Plaintiffs $9.99 per month for the Subscription Plans. (FAC ¶¶47, 50; Kristianson Decl. *passim*; Brewster Decl. *passim*.)

mBlox argues that Plaintiffs' claim for money had and received is simply a restatement of Plaintiffs' other claims, and fails for the same reasons that Plaintiffs' other claims fail. (Mot. 5:18-20.) However, as discussed herein, all of Plaintiffs' claims survive mBlox's motion for summary judgment. Thus, Plaintiffs' claim for money had and received survives as well.

### CONCLUSION

For the reasons set forth above, the Court should deny mBlox's motion for summary judgment.


Respectfully Submitted,

DATED: May 31, 2013                 **KRONENBERGER ROSENFELD, LLP**


By: ___s/ Jeffrey M. Rosenfeld_____
                      Jeffrey M. Rosenfeld

Attorneys for Plaintiffs

PLAINTIFFS' OPP TO mBLOX'S MOTION
FOR SUMMARY JUDGMENT