IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD FIELDS, an individual, CATHIE O'HANKS, an individual, ERIK KRISTIANSON, an individual, DAVID HANSON, an individual, RICHARD PARMENTIER, an individual, KIMBERLY BREWSTER, an individual, and KRISTIAN KUNDER, an individual, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>WISE MEDIA, LLC, a Georgia Limited Liability Company, MOBILE MESSENGER AMERICAS, INC., a Delaware Corporation, MBLOX, INC., a Delaware Corporation, MOTRICITY, INC., a Delaware Corporation, and DOES 1-10, inclusive,<br><br>Defendants. | No. C 12-05160 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

**INTRODUCTION**

In this putative class action involving an alleged text message scam, the immediate question is whether all claims against one "aggregator" should be dismissed. For the reasons stated below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiffs are consumers who claim to be victims of a cell phone scam known as "cramming." This is the practice of "placing unauthorized, misleading, or deceptive charges on

a consumer's telephone bill." *Federal Trade Commission v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 996 (N.D. Cal. 2010). The Federal Trade Commission states that, along with the Federal Communications Commission, it has "reviewed thousands of complaints about unauthorized third-party charges on wireless bills [which] undoubtedly understates the full extent of wireless cramming by a substantial amount . . . Many of the complaints involve recurring charges of just under $10 a month for 'premium services' that provide trivia or horoscope information by text message to a consumer's phone . . . Consumers often report receiving a text message informing them of a subscription to a service of which they have never heard and that they never requested." Federal Trade Commission, *FTC Calls Wireless Phone Bill Cramming a Significant Consumer Problem* (July 23, 2012), http://www.ftc.gov/opa/2012/07/cramming.shtm.

Cramming by defendants is the gravamen of the complaint. Plaintiffs allege that they received unsolicited text messages from defendant Wise Media, LLC. These text messages contained information about Wise Media's subscription plans that offered flirting tips, horoscope updates, celebrity gossip, or weight-loss advice. A typical initial text message read (Amd. Compl. ¶ 43):

> Lovegenietips Flirting Tips; 3msg/week for $9.99/m T&Cs: lovegenietips.com Msg&data rates may apply. Reply HELP for help, STOP to cancel. PIN ****

Wise Media sent the initial text messages using equipment that produced phone numbers through a random sequential number generator. Some plaintiffs never responded to the initial text message, some sent a reply text message rejecting enrollment, and some never even received an initial text message because their phones were not programed to allow text messaging services. *Regardless of the nature of the response, all plaintiffs were enrolled in the subscription plans*. When several plaintiffs got through to Wise Media to ask for a refund for the unauthorized charge, they were told that a paper check would be sent to them, but the check never arrived. Plaintiffs aver that they had no relationship with any defendant before receiving the initial text message and that their enrollment in the subscription plans was without their knowledge or consent (*id.* at ¶¶ 40–43, 82, 103, 110).

Defendant Mobile Messenger Americas, Inc. served as an aggregator for Wise Media by helping Wise Media administer the subscription plans. The complaint also names as defendants two more aggregators, mBlox Incorporated and Motricity, Inc., who allegedly played the same role as Mobile Messenger in the scam.

The California Code of Regulations defined (and still does define) an aggregator as "any person engaged in the business of facilitating the billing and collection of charges for intrastate telephone communication services by aggregating the information about telephone communication services provided by one or more service suppliers and submitting the combined information to one or more local exchange carriers for billing and collection." 18 CCR 2401(d). The Federal Trade Commission describes the role of an aggregator as follows:

> Billing aggregators open the gate to the telephone billing and collection system for vendors, and act as intermediaries between the vendors and the local phone companies, contracting with the local phone companies to have charges on behalf of their client vendors placed on consumers' telephone bills and to have the local telephone companies collect those charges from consumers. Once the charges are collected by the phone companies, the billing aggregators, after taking their fee, pass the revenues back to their client vendors. Although billing aggregators' services allow consumers to use their phone services as a payment mechanism, they are also susceptible to abuse if the billing aggregators fail to adequately police the practices of vendors who may engage in fraudulent billing.

Federal Trade Commission, *Telephone "Crammers" Settle FTC Charges* (Aug. 6, 2001), http://www.ftc.gov/opa/2001/08/billing3.shtm.

Vendors like Wise Media typically apply to the local exchange carrier and aggregator to obtain authorization to place charges on consumers' bills. The aggregator serves as a middleman between the local exchange carrier and vendor by monitoring and processing billing and complaints. *See generally Inc21.com*, 745 F. Supp. 2d at 997. California Public Utilities Code Section 2890(d)(2) establishes certain standards to which aggregators must adhere; for example, aggregators must ensure that a clear and concise description of any service is added to a consumer's bill and they must maintain a toll-free telephone number to respond to any questions or disputes.

3

The complaint asserts that Wise Media could only charge consumers for the subscription plans with the assistance of Mobile Messenger and the other aggregator defendants. After Wise Media sent the initial text messages, the aggregator defendants, including Mobile Messenger, enrolled plaintiffs in the subscription plans without their knowledge or consent. These actions were taken regardless of plaintiffs' response (or lack thereof) to the initial text message, and with knowledge or reckless disregard for the fact that enrollment was not voluntary. Without permission, Mobile Messenger then billed plaintiffs $9.99 per month, and some plaintiffs incurred additional fees for receiving the text messages. The aggregators also furnished customer support for the subscription plans by monitoring billings, addressing complaints, and processing cancellations. Mobile Messenger "shared in the revenue" from this scheme (Amd. Compl. ¶¶ 40, 46–49, 51, 60).

Plaintiffs' complaint asserts five claims against Mobile Messenger: (1) violation of California Business and Professions Code Section 17200; (2) conversion; (3) negligence; (4) unjust enrichment; and (5) money had and received. Mobile Messenger moves to dismiss all five claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**ANALYSIS**

**1.     PLEADING STANDARD.**

The parties dispute whether plaintiffs' claims should be analyzed under the standards of Rule 8 or Rule 9(b). The applicability of Rule 9(b) hinges not on the elements of the claim but rather on the nature of the allegations themselves. "In cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). If a plaintiff alleges a unified course of fraudulent conduct, the claim is said to be "grounded in fraud," and the pleading of that claim as a whole must satisfy Rule 9(b). A plaintiff may allege some fraudulent and some non-fraudulent conduct, in which case only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. *Id.* at 1103–04.

4

Rule 8(a) requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief, while Rule 9(b) requires that the circumstances constituting fraud be stated with particularity. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (citation omitted). Rule 9(b) serves to notify defendants of the specific fraudulent conduct against which they must defend; as such, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quotation marks and citations omitted). This rule sets a high bar, with the caveat that requirements may be relaxed when the relevant facts are within the opposing party's exclusive knowledge. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

The parties agree that plaintiffs' Section 17200 claim is subject to the heightened pleading requirements of Rule 9(b). Plaintiffs' conversion claim explicitly relies on the same unified course of fraudulent conduct, as the complaint avers that Mobile Messenger "engaged in this misconduct with oppression, fraud, and malice" (Amd. Compl. ¶ 137). Similarly, plaintiffs' claims for negligence, unjust enrichment, and money had and received are based on that same course of conduct. Those claims are therefore grounded in fraud and subject to Rule 9(b). Plaintiffs style their negligence claim as a pleading "in the alternative" to their other claims that allege the same underlying conduct that supports their fraud-based claims (*id.* at ¶ 177). Yet the negligence claim relies on the same unified course of fraudulent conduct, namely the allegedly fraudulent cramming scheme whereby plaintiffs were enrolled in and charged for subscription plans without permission.

Mobile Messenger argues that plaintiffs' claims fall short of Rule 9(b)'s elevated demands by failing to allege the "who, what, when, where, and how." Mobile Messenger also suggests the complaint employs "guilt by alleged association" when plaintiffs tar Mobile Messenger with the same brush as its more nefarious co-defendants (Dkt. No. 71 at 12). Not so. Although Mobile Messenger's motion relies on *Swartz* for the proposition that a complaint

1  subject to Rule 9(b) cannot "merely lump multiple defendants together," it overlooks the
2  subsequent sentence in that decision where our court of appeals made clear that "[i]n the
3  context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify
4  the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 764–65
5  (alterations and citations omitted). Plaintiffs have done so here. For example, the amended
6  complaint stresses that Mobile Messenger, as one of several aggregator defendants, helped
7  to enroll and bill consumers (Amd. Compl. ¶ 50). Plaintiffs should not be punished because
8  multiple actors plausibly engaged in the exact same behavior as part of the broader alleged
9  scheme. As to allegations where the complaint falters under the Rule 9(b) standard — such as
10 when it fails to plead which specific text messages Mobile Messenger aggregated — plaintiffs
11 persuasively argue that the relevant facts remain in the aggregator's exclusive knowledge and are
12 therefore not subject to the same rigors of the rule. With appropriate discovery, plaintiffs might
13 succeed in curing these deficiencies, though they should be aware that failure to do so may
14 eventually doom the viability of their claims.

**2.  MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).**

16 To survive a motion to dismiss, a complaint must contain sufficient factual matter,
17 accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556
18 U.S. 662, 663 (2009). A claim is facially plausible when there are sufficient factual allegations
19 to draw a reasonable inference that the defendant is liable for the misconduct alleged. While a
20 court "must take all of the factual allegations in the complaint as true," it is "not bound to accept
21 as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S.
22 544, 555 (2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient
23 to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d
24 1136, 1140 (9th Cir. 1996) (citation omitted). Dismissal is proper if it appears beyond doubt that
25 the non-movant can prove no set of facts to support its claims. *Ass'n for L.A. Deputy Sheriffs v.*
26 *Cnty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011).

**A.      California's Unfair Competition Law.**

Section 17200 prohibits acts or practices which are (1) unlawful, (2) unfair, or (3) fraudulent. The statute is written in the disjunctive, so it is violated where a defendant's conduct violates any of the foregoing prongs. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). As discussed below, plaintiffs adequately plead claims under the unlawful and fraudulent prongs, but fail to do so under the unfair prong. Mobile Messenger's motion to dismiss plaintiffs' Section 17200 claim is therefore **GRANTED IN PART** and **DENIED IN PART**.

*(1)      Plaintiffs Allege Unlawful Conduct Under Section 17200.*

The unlawful prong of Section 17200 "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cal. Consumer Health Care Council v. Kaiser Found. Health Plan, Inc.*, 47 Cal. Rptr. 3d 593, 596 (Cal. Ct. App. 2006). Plaintiffs' unlawful conduct claim is premised on violations of (1) Public Utilities Code Section 2890 and (2) Business and Professions Code Section 17602.

Public Utilities Code Section 2890 regulates charges on telephone bills. Mobile Messenger argues that Section 2890 governs telephone corporations, and thus does not apply to aggregators. Mobile Messenger's reply brief to this motion hints that plaintiffs use smoke and mirrors by quoting Section 2890(d)(2) when in fact plaintiffs' complaint instead relies on Section 2890(a). *Compare* Section 2890(d)(2) ("[The statute applies to] [a]ny person, corporation, or billing agent that charges subscribers for products or services on a telephone bill.") *with* Section 2890(a) ("A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized." ). While Section 2890(a) is silent as to which parties it governs, it is Mobile Messenger who glides over the clear meaning of the statute and the thrust of plaintiffs' complaint. No court has limited Section 2890(a) to telephone companies or precluded its applicability to billing aggregators, and Mobile Messenger cites no authority supporting its contention that it should be exempt.

Business and Professions Code Section 17602 regulates automatic renewal or continuous service offers. Mobile Messenger argues that plaintiffs' Section 17200 claim cannot rely upon

7

the statute because the complaint fails to plead facts showing that defendant, as an aggregator, ever made such an offer. Section 17602 prohibits a business from making these offers while: (a) failing to present the terms of the offer in a clear and conspicuous manner, (b) charging the consumer's account without first obtaining affirmative consent, and (c) failing to provide an acknowledgment of the consumer's enrollment in the offer. The complaint alleges that Mobile Messenger was involved in enrolling and charging consumers for the subscription plans without their consent or knowledge. Accepting plaintiffs' allegations as true, Section 17602 could serve as a predicate for their Section 17200 claim. Plaintiffs therefore plead sufficient facts to state a claim under the unlawful prong of Section 17200.

### *(2) Plaintiffs Allege Fraudulent Conduct Under Section 17200.*

In order to state a fraud claim under Section 17200, a plaintiff must show that "members of the public are likely to be deceived." *Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 636 (Cal. Ct. App. 2006). Mobile Messenger was allegedly involved in a scheme with several other defendants whereby it enrolled consumers in subscription plans without their consent and then charged them $9.99 per month for the unwanted service. As this order already outlined, plaintiffs comply with the demands of Rule 9(b) because their averments of fraud are made with sufficient particularity. Since Mobile Messenger's alleged conduct would likely deceive members of the public, plaintiffs successfully state a claim under the fraudulent prong of Section 17200.

### *(3) Plaintiffs Do Not Allege Unfair Conduct Under Section 17200.*

Conduct is "unfair" under Section 17200 when it offends an established public policy that is "tethered to specific constitutional, statutory, or regulatory provisions." *Id.* at 645. The unfairness prong must be tethered to some legislative policy; otherwise the courts will roam across the landscape of business practices picking and choosing which they like and which they dislike. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1120 (N.D. Cal. 2010), *aff'd in part, rev'd in part on other grounds*, 704 F.3d 712 (9th Cir. 2012).

1  Plaintiffs urge that Mobile Messenger's conduct "offends established public policies and
2 is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers"
3 (Amd. Compl. ¶ 144). This cursory allegation fails to state a claim under the unfairness prong
4 of Section 17200. *See Baba v. Hewlett Packard Co.*, No. 09-05946, 2010 WL 2486353, at
5 *8 (N.D. Cal. June 16, 2010) (Judge Richard Seeborg). Plaintiffs' opposition brief further
6 argues that Mobile Messenger's conduct "threatens competition" among aggregators because
7 the proceeds from the subscription plans could subsidize the fees it charges to its clients.
8 This contention appears nowhere in the complaint, which also fails to allege any specific
9 constitutional, statutory, or regulatory provision to which Mobile Messenger's conduct is
10 tethered. The pleading itself therefore fails to state a claim under the unfair prong of
11 Section 17200.

### *(4)* *Remedies.*

13  Both parties agree that Section 17200 provides for only limited remedies; prevailing
14 plaintiffs are generally restricted to injunctive relief and restitution. *Korea Supply Co. v.*
15 *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Nothing in Section 17200 conditions
16 the recovery of restitution on the plaintiff having made *direct* payments to a defendant; the
17 statute requires only that the plaintiff has an ownership interest in the money or property sought,
18 and that the defendant acquired the plaintiff's money or property by means of unfair competition.
19 *Shersher v. Super. Ct.*, 65 Cal. Rptr. 3d 634, 636 (Cal. Ct. App. 2007).

20  Mobile Messenger argues that only Wise Media can make restitution because the
21 complaint identifies Wise Media, and not the aggregator, as the party associated with the charges
22 on plaintiffs' cell phone bills. This argument is unpersuasive. The very nature of a "cramming"
23 scam is that the crammers place unauthorized charges on consumers' phone bills and then reap
24 the benefits once the consumers make their monthly payment to their mobile service provider.
25 Section 17200 is not rendered inapplicable simply because some of the scam money goes to one
26 confederate and the rest goes to another. The complaint asserts that Mobile Messenger charged
27 plaintiffs $9.99 per month for the subscription plans and that it shared in the revenues as part of

1  the scheme. Accepting these allegations as true, Mobile Messenger may well be liable to make
2  up partial, if not complete, restitution to plaintiffs.

3  For the foregoing reasons, plaintiffs' Section 17200 claim can proceed under the
4  unlawful and fraudulent prongs. Mobile Messenger's motion to dismiss is therefore **DENIED** as
5  to those two prongs, but **GRANTED** as to the unfair prong.

### B. Conversion.

Under California law, a plaintiff must plead three elements to state a claim for conversion: (1) ownership or right to possession of personal property; (2) a defendant's wrongful interference with the claimant's possession; and (3) damage to the claimant. *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 58 Cal. Rptr. 3d 516, 524 (Cal. Ct. App. 2007). Money cannot be the subject of a claim for conversion unless there is a specific, identifiable sum involved. *McKell v. Wash. Mutual, Inc.,* 49 Cal. Rptr. 3d 227, 255 (Cal. Ct. App. 2006). At this early stage in the litigation, however, it is only necessary for plaintiffs to allege an amount of money that is "capable of identification" rather than the specific, identifiable sum that would be required to sustain the claim at the summary judgment stage. *Natomas Gardens Inv. Group v. Sinadinos*, 710 F. Supp. 2d 1008, 1019–1020 (E.D. Cal. 2010) (Judge Frank Damrell).

Mobile Messenger argues that plaintiffs have not identified the sum of money converted with the requisite specificity and that the complaint merely asserts that the aggregator "shared in the revenue" with Wise Media. This is inaccurate. Plaintiffs claim that Mobile Messenger charged consumers $9.99 per month — an amount of money that is capable of identification. And, as further facts emerge during discovery, plaintiffs may also potentially rely on *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010), where our court of appeals held that when conversion results from the acts of multiple defendants acting as agents, a joint conversion occurs. Mobile Messenger's motion to dismiss plaintiffs' conversion claim is therefore **DENIED**.

### C. Negligence.

Mobile Messenger argues that plaintiffs' negligence claim is doomed because plaintiffs fail to establish a legal duty. The general rule in California is that each person has a duty to use

10

"ordinary care" to avoid injuring others and is liable for injuries caused by a failure to exercise this care. *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 472 (1997). Plaintiffs adequately establish a duty to use ordinary care when they assert that the aggregator enrolled them in the subscription plans. Mobile Messenger also allegedly played a role in billing plaintiffs for the service. Mobile Messenger only argues that it was not in privity and had no special relationship with plaintiffs, but plaintiffs are not required to establish a special relationship to state a claim for negligence. The motion to dismiss plaintiffs' negligence claim is therefore **DENIED**.

### D. Unjust Enrichment.

Unjust enrichment is not recognized as a stand-alone claim for relief in California. It is possible, however, to plead a claim that gives rise to a right to restitution. Unjust enrichment is a "general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121 (Cal. Ct. App. 2004) (quotations omitted). *McBride* discusses several potential bases for a claim seeking restitution; for example (*id.* at 121–22):

> [R]estitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory. . . [W]here appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment.

When ruling on a motion to dismiss, it is appropriate to look past the form of a pleading to its substance, and erroneous or confusing labels are to be ignored if the complaint pleads facts which would entitle the plaintiff to relief. *Saunders v. Cariss*, 274 Cal. Rptr. 186, 188 (Cal. Ct. App. 1990). Plaintiffs' purported claim for unjust enrichment is best construed as an attempt to plead a claim for restitution. *See McBride*, 20 Cal. Rptr. 3d at 121. The complaint alleges facts to support such a claim, and the motion to dismiss is therefore **DENIED**.

### E. Money Had and Received.

Mobile Messenger argues that money had and received is also not a valid claim in California. This argument fails. Money had and received is a common count which, under California law, is not a specific claim but is instead a form of pleading used to aver the existence

11

of monetary indebtedness. *Id.* at 127. "A cause of action for money had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain sum . . . The claim is viable wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Avidor v. Sutter's Place, Inc.*, 151 Cal. Rptr. 3d 804, 816 (Cal. Ct. App. 2013) (citations and quotations omitted). Plaintiffs assert that Mobile Messenger billed them $9.99 per month for the unauthorized subscription plans. Mobile Messenger shared in the revenue of this alleged scheme. Plaintiffs have adequately stated a claim for money had and received. The motion to dismiss is therefore **DENIED**.

## CONCLUSION

For the foregoing reasons, Mobile Messengers's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs may seek leave to amend this complaint and will have until **JULY 12, 2013**, to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to this motion. Plaintiffs should plead their best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein, and should include as an exhibit a redline or highlighted version identifying all changes. If such a motion is not made, the answer will be due ten calendar days thereafter.

**IT IS SO ORDERED.**

Dated: June 21, 2013

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12