**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
Alison B. Kwan (Bar No. 267884)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:  (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com
alison@KRInternetLaw.com


**BAILEY & GLASSER LLP**
John Roddy (admitted pro hac vice)
125 Summer Street, Suite 1030
Boston, MA 02110
Telephone:  (617) 439-6730
Facsimile:  (617) 951-3954
jroddy@baileyglasser.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EDWARD FIELDS**, an individual, **ERIK KRISTIANSON**, an individual, **DAVID HANSON**, an individual, **RICHARD PARMENTIER**, an individual, **KEVIN BREWSTER**, an individual, and **KRISTIAN KUNDER,** an individual, individually and on behalf of a class of similarly situated persons,<br><br>            Plaintiffs,<br><br>      v.<br><br>**WISE MEDIA, LLC**, a Georgia limited liability company, **MOBILE MESSENGER AMERICAS, INC.**, a Delaware corporation, **mBLOX INCORPORATED**, a | **CLASS ACTION**<br><br>Case No. 3:12-cv-05160-WHA<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**SECOND AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER | ROSENFELD  150 Post Street, Suite 520, San Francisco, CA  94108

Delaware corporation, **MOTRICITY, INC.**, a Delaware corporation, **M-QUBE, INC.**, a Delaware corporation, and **DOES 1-10**, inclusive,

        Defendants.

Plaintiffs Edward Fields, Erik Kristianson, David Hanson, Richard Parmentier, Kevin Brewster, and Kristian Kunder, individually and on behalf of a class of similarly situated persons, bring this action, by and through their undersigned counsel, and allege as follows:[1]

### INTRODUCTION

1.    This action concerns a scheme by Defendants Wise Media, LLC ("Wise Media"), Mobile Messenger Americas, Inc. ("Mobile Messenger"), mBlox Incorporated ("mBlox"), Motricity, Inc. ("Motricity"), and m-Qube, Inc. ("m-Qube") (collectively, "Defendants") to enroll consumers—without their knowledge or consent—in short message service ("SMS") text subscription plans with monthly membership fees of $9.99.

2.    According to Defendants, consumers voluntarily subscribed to receive three SMS texts per week, delivered to their mobile phones, which texts provide various tips or trivia, such as flirting tips, via "LoveGenieTips," "LongLifeLoveTips," "LoveTips4Life," and "LuvSwap"; horoscopes, via "HoroscopeGenie"; or celebrity gossip tidbits, via "GossipRage" (the "Subscription Plans").

3.    The truth is, no consumers voluntarily subscribed to any such service. Rather, Defendants sent unsolicited texts to consumers who had no prior relationship with Defendants.

---

[1] This Second Amended Complaint is submitted to conform to the Court's September 24, 2013 order, [D.E. No. 163], allowing Plaintiffs to amend to add negligence claims and TCPA claims against the Aggregator Defendants. In addition, Plaintiffs have narrowed the definitions of the classes in Paragraphs 138-140, based on Plaintiffs' identification, through discovery, of the specific short codes associated with the Wise Media subscription plans.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

4.     Regardless of whether a consumer responded to the Defendants' initial text, in a matter of minutes the Defendants enrolled the consumer in one of the Subscription Plans without the consumer's authorization, and charged the consumer $9.99 per month on their mobile phone bill, until the consumer or their carrier noticed the charge and cancelled the service.

5.     Wise Media operated the Subscription Plans, enrolled consumers in the plans, and wrongfully charged consumers for the plans.

6.     Defendants Mobile Messenger, mBlox, Motricity, and m-Qube (collectively, the "Aggregator Defendants") served as mobile service aggregators that acted as intermediaries between Wise Media and the mobile phone companies.  The Aggregator Defendants played a central role in the operation of the Subscription Plans, including by sending the text messages at issue.  In this role, the Aggregator Defendants knew or should have known that the Subscription Plans were fraudulent and continued to enroll and charge consumers for the Subscription Plans nonetheless.

7.     The Federal Trade Commission (the "FTC") recently condemned this practice of imposing unauthorized charges, known as "cramming," in the cell phone industry.  The FTC stated that it and the Federal Communications Commission (the "FCC") have reviewed thousands of cramming complaints in the past few years, but even that volume represents just the tip of the iceberg.  The FTC noted that "many of the complaints involve recurring charges of just under $10 a month for 'premium services' that provide trivia or horoscope information by text message to a consumer's phone," the very scheme that Plaintiffs here challenge.

8.     The FCC has reported that because crammed charges are inconspicuously added to consumers' phone bills, the charges often go undetected for many months or even years, if they are detected at all.  As a result, less than 5% of consumers ever learn about crammed charges.

9.     As a result of Defendants' misconduct, including their use of consumers' mobile phone numbers to send unsolicited text messages and to involuntarily enroll

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1  consumers in one of the Subscription Plans, Plaintiffs and numerous other consumers

2  similar to Plaintiffs were wrongfully charged subscription fees.

3                               **JURISDICTION AND VENUE**

4         10.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 for

5  Plaintiffs' claim under the Telephone Consumer Protection Act, 47 U.S.C. §227.  This

6  Court has subject matter jurisdiction under 28 U.S.C. §1367 for Plaintiffs' remaining

7  claims because they are so related to Plaintiffs' federal claim that they form part of the

8  same case or controversy under Article III of the U.S. Constitution.

9         11.    This Court also has subject matter jurisdiction over this matter under 28

10  U.S.C. §1332(d)(2) because this is a civil action in which the matter in controversy

11  exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class

12  action in which a member of the class of plaintiffs is a citizen of a State different from all

13  Defendants.   On information and belief, less than two-thirds of the members of all

14  proposed plaintiff classes in the aggregate are citizens of California.

15         12.    This Court has personal jurisdiction over Defendants because a substantial

16  part of Defendants' misconduct that gave rise to this action occurred in California,

17  including because some of the Plaintiffs reside in California and were harmed in

18  California.  Moreover, Defendant Mobile Messenger and m-Qube have their headquarters

19  in Los Angeles, California and Defendant mBlox has its headquarters in Irvine, California.

20         13.    Venue is proper under 28 U.S.C. §1391(a)(2) because this is a judicial

21  district in which a substantial part of the events or omissions giving rise to the claim

22  occurred.  To wit, some of the Plaintiffs reside in this district and were harmed in this

23  district, and on information and belief, numerous other class members reside in this

24  district.

25                                        **PARTIES**

26         14.    Plaintiff Edward Fields is an individual residing in Albany, California.

27         15.    Plaintiff Erik Kristianson is an individual residing in El Cerrito, California.

28         16.    Plaintiff David Hanson is an individual residing in Prior Lake, Minnesota.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108



1    17.    Plaintiff Richard Parmentier is an individual residing in San Jose, California.

2    18.    Plaintiff Kevin Brewster is an individual residing in LaPorte, Colorado.

3    19.    Plaintiff Kristian Kunder is an individual residing in Chicago, Illinois.

4    20.    Defendant Wise Media, LLC is a Georgia limited liability company based in

5    Grayson, Georgia.

6    21.    Defendant Mobile Messenger Americas, Inc. is a Delaware corporation

7    based in Los Angeles, California.

8    22.    Defendant mBlox Incorporated is a Delaware corporation based in Irvine,

9    California.

10    23.    Defendant Motricity, Inc. is a Delaware corporation based in Bellevue,

11    Washington.

12    24.    Defendant m-Qube, Inc. is a Delaware corporation based in Los Angeles,

13    California.

14    25.    Plaintiffs do not know the true names and capacities of the Defendants

15    sued herein as Does 1 through 10, inclusive (the "Doe Defendants") and therefore sue

16    these Defendants by such fictitious names.  Plaintiffs will amend this complaint to allege

17    the true names and capacities of Does 1 through 10, inclusive, when ascertained.

18    Plaintiffs are informed and believe, and, on that basis, allege that each Defendant sued

19    herein by a fictitious name is in some way liable and responsible to Plaintiffs based on

20    the facts herein alleged.

**FACTUAL ALLEGATIONS**

**The Cottage Industry of Cramming Fraud**

23    26.    A recent Senate Commerce Committee report found that telephone

24    companies place approximately 300 million third-party charges on their customers'

25    landline bills, **amounting to more than $2 billion in charges each year.** *Unauthorized*

26    *Charges on Telephone Bills*, Staff Report of Committee on Commerce, Science, and

27    Transportation, Office of Oversight and Investigations, July 12, 2011, at ii.

28    //




KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

27.     Telephone customers "overwhelmingly reported" that third-party charges discovered on their bills were unauthorized. *Id.*

28.     The Committee ultimately concluded that although there are "some legitimate companies" in the third-party billing industry, id., at 44, "many third-party vendors are illegitimate and *created solely to exploit third-party billing.*" *Id.,* at iii (emphasis added).

29.     As a result, "third-party billing has made telephone customers targets for fraud." *Id.*, at 44.

30.     The Committee Report noted that although its findings were focused upon third-party billing abuses on landline phones, cramming on wireless phones is subject to the same problems. *Id.*, at 6.

31.     Cramming fraud in the wireless industry was examined in recent FCC administrative proceedings. *In the Matter of Empowering Consumers to Prevent and Detect Billing for Unauthorized Charges ("Cramming")*, CG Docket No. 11-116.

32.     The Commission has acknowledged that the percentage of cramming complaints appears to have nearly doubled from 2008-2010 to 2011.  This dramatic increase is reflective of a trend that "overwhelming[ly] demonstrates [it] … to be … a significant problem," resulting "in millions of fraudulent charges being placed on consumer bills, ….".  Comments of the Center for Media Justice, Consumer Action, Consumer Federation of America, Consumers Union, Nation Consumer Law Center, and National Consumer League, at 10.

33.     Of particular relevance to this lawsuit, these public interest groups noted that "[e]arlier this year, for example, there were reports of thousands of complaints about $9.99 a month charges for "mobile purchases" stemming from allegedly unsolicited and unwanted text messages from a company known as "Love Genie Tips." *Id.*

34.     The National Consumer Law Center noted that "[m]any times, text spam will include a message like: 'HoroscopeGenie Alert: 3horoscopes/wk for $9.99/mo Reply HELP for help, STOP to cancel. Msg&data rates may apply.' If a consumer does not reply

**SECOND AMENDED CLASS ACTION COMPLAINT**

1  'STOP,' then the spammer assumes that the consumer wants the service and bills the

2  consumer despite never receiving any affirmative consent. Sometimes, even when a

3  consumer tells the crammer to stop, the crammer will continue to charge the consumer."

4  *Id.*, at 12.

5       35.    A Google search for "lovegenietips" or "horoscopegenie" produces at least

6  five pages of hits containing complaints from consumers alleging that they never

7  subscribed to these "services" and were nevertheless charged $9.99 per month on their

8  mobile phone bills until they discovered the unauthorized charges.

9       36.    The site scambook.com has a representative sampling of Wise Media

10  complaints, all alleging the same unauthorized charges.

11  •  Wise Media LLC Complaint 133772 for $9.99

12     Posted Jul 10th, 2012

13

14     Today I received my t-mobile bill and I was charged 9.99 plus taxes for a
   subscription on Wise Media LLC. I never subscribed for anything and I never
   received a text or email confirming any…

15

16  •  Wise Media LLC Complaint 104822 for $9.99

17     Posted Apr 20th, 2012

18     This appeared on my child's line and I am so mad...How can they do this?!!! There
   is no agreement or use of their services what so ever on our part. I need this

19     resolved!

20  •  WiseMediaUS Complaint 124415 for $19.98

21

22     Posted Jun 11th, 2012

23     I was billed by AT&T. It was attached to my AT&T bill by www.mblox.com.
   However when I called mblox they said that it was a bill from WiseMediaUS and I

24     would get a call back, but no one…

25  •  Wise Media LLC Complaint 145308 for $9.99

26     Posted Aug 10th, 2012

27

28

       6     **SECOND AMENDED CLASS ACTION
COMPLAINT**

I was charged in my cell ph 9.99 for a "subscription" that I supposedly bought. This is a total scam, that is not true, I never bought anything from them. I called my cell provider and they…

- Wise Media (Love Genie Tip Alerts Phone Number Complaint 92686 for $9.99

Posted Mar 23rd, 2012

Received text and called immediately telling I did not authorize such a charge and asking what the company does (no reply). I then told the operator to cancel immediately and was told I would receive…

- LongLifeLoveTipsAle and LoveTips4LifeAlerts Complaint 79648 for $21.52

Posted Feb 26th, 2012

I noticed my cell phone bill was much higher. There are 2 charges dated 02/10/12 and 02/12/12 both from a Wise Media titled LongLifeLoveTips Ale and LoveTips4Life Alerts both charges are 9.99 each…

37.     Numerous similar complaints have been made to the Federal Trade Commission and numerous states attorneys general.

38.     The New  York Times featured Wise Media's HoroscopeGenie "service" in an April 7, 2012 follow-up to an earlier article [March 28, 2012] detailing a Massachusetts doctor's story of being victimized by this fraud.

39.     The FCC has reported that because crammed charges are inconspicuously added to consumers' phone bill, less than 5% of consumers ever learn about the crammed charges.

**The Mechanics of Defendants' Cramming Fraud**

40.     On information and belief, Wise Media owns and operates various Internet websites, including but not limited to websites located at <www.lovegenietips.com>, <www.horoscopegenie.com>,     <www.longlifelovetips.com>,     <www.gossiprage.com>, <www.diettipz.com>, <www.lovetips4life.com>, and <www.luvswap.me> (the "Websites"). The Websites offer consumers the opportunity to enroll in subscription SMS text plans,[2]

---

[2] An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  whereby consumers receive flirting tips, horoscopes, celebrity gossip tidbits, or weight

2  loss advice a few times per week for $9.99 per month.

3      41.    The Websites' home pages display these offers and provide a method

4  through which consumers can theoretically enroll in the Subscription Plans voluntarily by

5  entering their mobile phone numbers.

6      42.    However, no consumers actually enrolled in the Subscription Plans

7  voluntarily.

8      43.    Rather, on information and belief, Wise Media obtained and used the mobile

9  phone numbers of consumers without the consumers' knowledge or consent.  Wise Media

10 obtained and used these numbers for consumers who had never visited the Websites,

11 who had never expressed interest in Wise Media or the Subscription Plans, and who had

12 no existing or prior relationship with Wise Media.

13     44.    On information and belief, without any action or solicitation by the

14 consumers, the Aggregator Defendants sent SMS texts to consumers' mobile phone

15 numbers (the "Initial Text").

16     45.    On information and belief, the Aggregator Defendants sent these SMS texts

17 using equipment that had the capacity to store or produce telephone numbers to be

18 called, using a random sequential number generator.

19     46.    As an example, for consumers who were charged for the LoveGenieTips

20 Subscription Plan, the Initial Texts stated:

21     Lovegenietips    Flirting    Tips;    3msg/week    for    $9.99/m    T&Cs:
       lovegenietips.com Msg&data rates may apply. Reply HELP for help, STOP
22     to cancel. PIN ****

23     47.    On information and belief, consumers who were enrolled in the other

24 Subscription Plans received similar Initial Texts tailored to the specific Subscription Plan.

25     48.    Regardless of whether a consumer responded to the Initial Text, in a matter

26 of minutes, Defendants enrolled the consumer in one of the Subscription Plans without

27 the consumer's knowledge or consent.

28 //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

49.    Once enrolled, Defendants billed the consumer $9.99 per month for the Subscription Plan until the consumer or their carrier cancelled the service.

### Wise Media's Role in the Misconduct

50.    On information and belief, Wise Media and The Winley Group are functionally the same entity and they operate interchangeably and are alter egos of each other.

51.    On information and belief, Wise Media and The Winley Group interchangeably served as the merchant and content provider for the Subscription Plans, and in that role operated the Subscription Plans, contracted and communicated with the Aggregator Defendants about the Subscription Plans, acquired consumers' phone numbers and caused text messages to be sent to those consumers in furtherance of the Subscription Plans, enrolled consumers in the Subscription Plans, charged consumers for the Subscription Plans, and addressed consumer complaints about the Subscription Plans.

### The Aggregator Defendants' Roles in the Misconduct

52.    On information and belief, Defendants Mobile Messenger, m-Qube, mBlox, and Motricity (the "Aggregator Defendants") all knew about, actively participated in, and provided material assistance to Wise Media in the above-described misconduct.[3] Additionally, the Aggregator Defendants shared in the revenue from the above-described misconduct with Wise Media.

53.    The Aggregator Defendants served as SMS aggregators for Defendant Wise Media.  Aggregators serve as a liaison between a merchant (*i.e.* Wise Media) and

[3] m-Qube claims to be a distinct, wholly owned subsidiary of Mobile Messenger.  In fact, on information and belief, Mobile Messenger and m-Qube operate interchangeably.  On information and belief, m-Qube uses Mobile Messenger's name and address to send invoices and correspondence, m-Qube and Mobile Messenger operate from the same office space, m-Qube and Mobile Messenger provide overlapping services, and employees of m-Qube claim to be employees of Mobile Messenger, and/or all of the employees of m-Qube have become employees of Mobile Messenger and m-Qube has no employees.

**SECOND AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   mobile service provider (e.g. T-Mobile).  Thus, Wise Media could only charge consumers

2   for the Subscription Plans on consumers' mobile phone bills with the assistance of the

3   Aggregator Defendants.

4   54.   On information and belief, in their roles as aggregators, the Aggregator

5   Defendants sent the Initial Text and all subsequent text messages to consumers.

6   55.   In their roles as aggregators, the Aggregator Defendants provided material

7   support to Wise Media in enrolling consumers in the Subscription Plans and charging

8   consumers for the Subscription Plans.

9   56.   On information and belief, the Aggregator Defendants also provided

10   customer support for the Subscription Plans and monitored the billings, complaints, and

11   cancellations of the Subscription Plans.

12   57.   As a result, the Aggregator Defendants knew about—or recklessly

13   disregarded—the fact that consumers had not voluntarily enrolled in the Subscription

14   Plans.

**Plaintiff Fields**

16   58.   On March 13, 2012 at 6:05 a.m., Plaintiff Fields received an SMS text

17   message from a five-digit sender number, 836-60.  The text advertised a flirting tips

18   service (i.e., LoveGenieTips), which offered 3 flirting tip texts per week for a charge of

19   $9.99 per month.

20   59.   Two minutes later, at 6:07 a.m., Fields received a second SMS text

21   message from the same five-digit sender number, 836-60, stating that he had been

22   enrolled in the LoveGenieTips Subscription Plan.

23   60.   Fields was in bed asleep when he received the texts.  Although the sound

24   of his mobile phone signaling the first text woke him up, he did not leave his bed until

25   after both text messages had been received, and only viewed them once he had arisen.

26   61.   Fields did not recognize the five-digit sender number or LoveGenieTips.

27   Fields did not enroll in any flirting tips subscription plan and did not authorize the sending

28   of the texts.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

62.     Fields does not often use text messages, and thus he does not have a monthly text or data allotment as part of his mobile phone plan.  Fields is charged $0.20 for each text he receives by his wireless carrier, AT&T.

63.     Because Fields knew that he would be charged for each of the unsolicited text messages, he called AT&T later that day to ask that the charges be removed.  When he spoke with a representative of AT&T, he was informed that he had also been billed $9.99 for the LoveGenieTips Subscription Plan.

64.     Fields never intended to enroll in the Subscription Plan.  Fields did not have a relationship with Defendants, had not solicited any goods or services from Defendants, and had not responded to any of the texts.

65.     Fields' subsequent mobile phone bill contained a monthly subscription charge dated March 13, 2012 for LoveGenieTips Alerts in the amount of $9.99.  The bill provided the information for the subscription provider as Wise Media with contact information listed as 800-331-0500 (a phone number for AT&T).  Fields' mobile phone bill also contained two $0.20 charges for the unsolicited text messages.

66.     Ultimately, Fields was able to convince his mobile service provider to refund the Subscription Plan charges and the text-receipt charges.

67.     Fields never authorized any person or entity to bill him for the LoveGenieTips Subscription Plan, which was billed to his mobile phone bill the same day and presumably minutes after he received the first SMS text message from 836-60.  Nor did Fields authorize the unsolicited texts or the resulting charges.

**Plaintiff Kristianson**

68.     Plaintiff Kristianson shares a mobile phone service plan with his grandmother Cathie O'Hanks.   To wit, the monthly charges for Kristianson's and O'Hanks' mobile phones appear on a single bill, which is directed to O'Hanks.  This type of mobile service plan is commonly referred to as a friends-and-family plan.

69.     On February 3, 2012, Kristianson received an SMS text message from a five-digit sender number, 271-40.  The text advertised a horoscope service (i.e.,

11

**SECOND AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  HoroscopeGenie), which offered 3 horoscope texts per week for a charge of $9.99 per
2  month.

3       70.     Kristianson did not recognize the five-digit sender number or
4  HoroscopeGenie.

5       71.     Kristianson had never expressed interest in any horoscope texting service
6  and had never heard of any of the Defendants or their horoscope-related websites.

7       72.     Because Kristianson did not recognize the five-digit sender number and
8  had no interest in horoscope services, he sent a reply text indicating that he did not want
9  to be enrolled in the HoroscopeGenie Subscription Plan.

10      73.     Despite Kristianson's reply text, Defendants enrolled Kristianson in the
11 HoroscopeGenie Subscription Plan and charged O'Hanks $9.99 per month on O'Hanks'
12 mobile phone bill.

13      74.     Neither Kristianson nor O'Hanks ever authorized the charges for the
14 HoroscopeGenie Subscription Plan, which was charged to O'Hanks' mobile phone bill.
15 Neither Kristianson nor O'Hanks authorized the unsolicited texts.

16      75.     Because of the voluminous nature of O'Hanks' mobile phone bill, O'Hanks
17 did not discover these unauthorized charges for three months.

18      76.     AT&T, on its own initiative, refunded the Subscription Plan charges.

19                          **Plaintiff David Hanson**

20      77.     Plaintiff Hanson shares a mobile phone service plan with his wife,
21 Jacqueline P. Anderson.  To wit, the monthly charges for Anderson's and Hanson's
22 mobile phones appear on a single bill, which is directed to and paid by Anderson.

23      78.     In or around July 2012, Hanson received an SMS text message from a five-
24 digit sender number, 849-30.  The text advertised a flirting tips service (i.e.,
25 LongLifeLoveTips), which offered 3 flirting tip texts per week for a charge of $9.99 per
26 month.

27 //

28 //

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

79.     Neither Hanson nor Anderson recognized the five-digit sender number or LongLifeLoveTips.

80.     Neither Hanson nor Anderson had ever expressed interest in any flirting tips texting service and had never heard of any of the Defendants or their flirting tips-related websites.

81.     Because Hanson did not recognize the five-digit sender number and had no interest in flirting tips, he ignored the text.

82.     Neither Hanson nor Anderson authorized the unsolicited texts from 849-30.

83.     At the time of the Initial Text, neither Hanson nor Anderson used a smart phone, and thus were ineligible to receive premium data services, such as the LongLifeLoveTips Subscription Plan.

84.     In early August 2012, Hanson upgraded his mobile phone to a "smart" phone, which was eligible for premium data services, such as the Subscription Plans.

85.     In early September 2012, Hanson received three text messages from the five-digit sender number 849-30.  These messages concerned the LongLifeLoveTips Subscription Plan.

86.     In late August or early September, 2012, Anderson and Hanson received their first mobile phone bill for the smart phone.  This bill included an unauthorized charge for $9.99 for the LongLifeLoveTips Subscription Plan.

87.     Neither Anderson nor Hanson authorized the charge for the LongLifeLoveTips Subscription Plan, and neither Anderson nor Hanson authorized any person or entity to bill them for the LongLifeLoveTips Subscription Plan.

88.     Anderson contacted Wise Media in an effort to obtain a refund for the unauthorized charge.  While a representative of Wise Media told Anderson that she would receive a paper check for the refund, Anderson never received any refund from Wise Media.

89.     Ultimately, Anderson and Hanson were able to convince their mobile service provider to refund the Subscription Plan charges.

**Plaintiff Richard Parmentier**

90.     In late July 2012, Plaintiff Parmentier received an SMS text message from a five-digit sender number, 721-39.  The text advertised a celebrity gossip tidbit service (i.e., GossipRage), which offered 3 celebrity gossip tidbit texts per week for a charge of $9.99 per month.

91.     A couple of minutes later, Parmentier received a second SMS text message from the same five-digit number, 721-39, stating that he had been enrolled in the GossipRage Subscription Plan.

92.     Parmentier never authorized these unsolicited texts from 721-39.

93.     Because Parmentier did not recognize the five-digit sender number and had no interest in celebrity gossip, he ignored the texts.

94.     Moreover, Parmentier never intended to enroll in the Subscription Plan. Parmentier did not have a relationship with Defendants, had not solicited any goods or services from Defendants, and had not responded to any of the texts.

95.     Parmentier's subsequent mobile phone bill contained a monthly subscription charge dated July 28, 2012 for GossipRage in the amount of $9.99.  The bill provided the information for the subscription provider as Wise Media with contact information listed as a phone number of 888-412-6574.

96.     On August 28, September 28, and October 28, 2012 Parmentier was charged again for GossipRage in the amount of $9.99 for each month.

97.     Parmentier did not notice these unauthorized charges until he received his October or November 2012 mobile phone bill.  At that point, Parmentier contacted his mobile service provider and advised the provider that Parmentier had not authorized the charges.  While Parmentier's mobile service provider agreed to block future charges for the GossipRage Subscription Plan, it refused to provide any credit for the unauthorized charges.

//

//

14

**SECOND AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

98.    Parmentier never authorized the charge for the GossipRage Subscription Plan, which was charged to his mobile phone bill the same day and presumably minutes after he received the first SMS text message from 721-39.

**Plaintiff Kevin Brewster**

99.    Plaintiff Kevin Brewster shares a mobile phone service plan with his wife Kimberly Brewster.  To wit, the monthly charges for Ms. Brewster's and Mr. Brewster's mobile phones appear on a single bill, which is directed to and paid by Mr. Brewster.

100.    On September 14, 2012, Mr. Brewster received an SMS text message from a five-digit sender number, 530-29.  The text advertised a flirting tips service (i.e., LuvSwap), which offered 3 flirting tip texts per week for a charge of $9.99 per month.

101.    Mr. Brewster did not recognize the five-digit sender number or LuvSwap.

102.    Mr. Brewster never authorized these unsolicited texts from 530-29.

103.    Mr. Brewster had not expressed interest in any flirting tips texting service and had never heard of any of the Defendants or their flirting tips-related websites.

104.    Because Mr. Brewster did not recognize the five-digit sender number and had no interest in flirting tips, he ignored the text.

105.    Neither Ms. Brewster nor Mr. Brewster ever intended to enroll in the LuvSwap Subscription Plan.  Neither Ms. Brewster nor Mr. Brewster had a relationship with Defendants, solicited any goods or services from Defendants, or responded to any of the texts.

106.    Mr. Brewster's subsequent mobile phone bill contained a monthly subscription charge dated September 14, 2012 for LuvSwap in the amount of $9.99.  The bill provided the information for the subscription provider as Wise Media.

107.    Mr. Brewster again received texts from the five-digit sender number 530-29 on September 25, October 5, and October 18, 2012.

108.    Neither Ms. Brewster nor Mr. Brewster authorized the charge for the LuvSwap Subscription Plan, which was charged to their mobile phone bill the same day

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108



**SECOND AMENDED CLASS ACTION COMPLAINT**

1   and presumably minutes after Mr. Brewster received the first SMS text message from

2   530-29.

3       109.   Ms. Brewster contacted Wise Media in an effort to obtain a refund for the

4   unauthorized charge.  While a representative of Wise Media told Ms. Brewster that she

5   would receive a paper check for the refund, neither Ms. Brewster nor Mr. Brewster ever

6   received any refund for the Subscription Plan charges.

7                              **Plaintiff Kristian Kunder**

8       110.   Plaintiff Kunder shares a friends-and-family mobile plan with his mother.  To

9   wit, the monthly charges for Kunder's and his mother's mobile phones appear on a single

10  bill, which is directed to and paid by Kunder.

11      111.   In or around March 2012, without his or his mother's knowledge or consent,

12  Wise Media began charging Kunder via his mother's mobile phone number for the

13  LoveGenieTips Subscription Plan.

14      112.   Neither Kunder nor his mother ever intended to enroll in the LoveGenieTips

15  Subscription Plan.   Neither Kunder nor his mother ever had a relationship with

16  Defendants, had not solicited any goods or services from Defendants, and did not

17  communicate with any Defendant prior to being charged for the Subscription Plan.

18  Neither Kunder nor his mother authorized any charges for the LoveGenieTips

19  Subscription Plan.

20      113.   While the unauthorized charges for the LoveGenieTips Subscription Plan

21  continued on a monthly basis, from March through October, Kunder did not notice the

22  charges for the Subscription Plan until November 2012.

23      114.   When Kunder contacted his mobile service provider, the provider agreed to

24  block future charges for the LoveGenieTips Subscription Plan, and agreed, as a

25  courtesy, to provide Kunder with a credit for one of the eight unauthorized charges.

26      115.   Kunder also contacted Wise Media in an effort to obtain a refund for the

27  remaining unauthorized charges.  While a representative of Wise Media told Kunder that

28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   he would receive a paper check for the refund, Kunder never received any refund from

2   Wise Media.

3   **The Aggregator Defendants' Special Relationship with Plaintiffs**

4   116.   The Aggregator Defendants entered into contracts with Wise Media

5   whereby the Aggregator Defendants agreed to work with Wise Media in enrolling

6   consumers in the Subscription Plans.  Specifically, the Aggregator Defendants helped

7   create, test and initiate the Subscription Plans; certified the Subscription Plans for

8   operation on wireless networks; managed the Subscription Plans generally; sent the text

9   messages in operation of the Subscription Plans; audited the Subscription Plans; created

10  and reviewed billing statements for the Subscription Plans, which included summaries of

11  refunds and reversals; and addressed consumer complaints about the Subscription

12  Plans.

13  117.   Plaintiffs never entered into any contract with the Aggregator Defendants or

14  with Wise Media.

15  118.   Even so, the Aggregator Defendants' performance under their contracts

16  with Wise Media directly affected consumers, who were involuntarily enrolled in and

17  charged for the Subscription Plans.

18  119.   More specifically, the Aggregator Defendants' performance under their

19  contracts with Wise Media directly affected Plaintiffs.  Defendant mBlox worked with Wise

20  Media to enroll Plaintiffs Kristianson and Brewster in the Subscription Plans.  Defendants

21  Mobile Messenger and m-Qube worked with Wise Media to enroll Plaintiffs Hanson and

22  Parmentier in the Subscription Plans; additionally Mobile Messenger and m-Qube worked

23  with Wise Media to continue charging Kunder for a Subscription Plan when Wise Media

24  migrated the aggregation of that plan from Motricity to Mobile Messenger and m-Qube.

25  Defendant Motricity worked with Wise Media to enroll Plaintiffs Fields and Kunder in the

26  Subscription Plans.

27  //

28  //

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

120.   By working with Wise Media to operate the Subscription Plans, and by enrolling consumers, including Plaintiffs, in the Subscription Plans, the Aggregator Defendants intended to affect all enrollees of the Subscription Plans, including Plaintiffs.

121.   It was foreseeable that Plaintiffs and other consumers would be harmed by involuntary enrollments in the Subscription Plans.  More specifically, it was foreseeable that Plaintiffs and other consumers would be wrongly charged $9.99 per month if they were enrolled in the Subscription Plans without their knowledge or consent.

122.   It was also foreseeable that if the Aggregator Defendants disregarded signs that the Subscription Plans were fraudulent, while they continued to work with Wise Media in enrolling consumers in the Subscription Plans, that Plaintiffs and other consumers would be harmed.

123.   The Aggregator Defendants were in a unique position to detect signs that the Subscription Plans were fraudulent and to prevent Plaintiffs from being harmed, given the Aggregator Defendants' involvement in multiple aspects of the Subscription Plans, including the sending of the texts, the transfer of consumer data to the mobile service providers, and the handling of consumer complaints and requests for refunds.

124.   The Aggregator Defendants disregarded signs that the Subscription Plans were fraudulent, including by failing to perform basic due diligence about Wise Media and the Subscription Plans, disregarding excessive refund and cancellation rates for the Subscription Plans, disregarding consumer complaints about the Subscription Plans, disregarding warnings by consumer watchdogs about the Subscription Plans, disregarding state and federal government complaints and inquiries about the Subscription Plans, and disregarding wireless carrier complaints and inquiries about the Subscription Plans.

125.   Each Plaintiff in the Enrollment Class suffered a specific and certain injury as a result of the Aggregator Defendants' conduct, namely the loss of $9.99 per month for the Subscription Plans.

//

18

**SECOND AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

126.   The Aggregator Defendants played a central role in initiating the Subscription Plans and enrolling Plaintiffs in the Subscription Plans.   But for the Aggregator Defendants' involvement in the Subscription Plans, Plaintiffs would not have been enrolled in and charged for the plans.

127.   The Aggregator Defendants' conduct is morally blameworthy in that: a) the Aggregator Defendants enrolled Plaintiffs and thousands upon thousands of other consumers in the Subscription Plans, b) the Aggregator Defendants disregarded overt signs that the Subscription Plans were fraudulent, and that Plaintiffs and the other consumers had not authorized the enrollments, and c) the Aggregator Defendants shared in the wrongful revenue from these fraudulent enrollments.

128.   Public policy strongly supports imposing greater responsibility on aggregators (such as the Aggregator Defendants) to ensure that consumers are not crammed.

129.   The FCC has reported that cramming affects 15-20 million U.S. households per year.

130.   The FCC has further reported that because crammed charges are inconspicuously added to consumers' phone bill, the charges often go undetected for many months or even years, if they are detected at all.   As a result, less than 5% of consumers ever learn about crammed charges.

131.   The FCC, FTC, state attorneys general, and consumer watchdogs have all noted that aggregators are in a unique and superior position to detect and prevent cramming.   Specifically, these entities have noted that aggregators: a) supply wireless carriers with consumers' telephone numbers and the amount to be charged, b) request that the crammed charges by placed on consumers' phone bills, c) do not provide the consumers' name, address, or proof of authorization to the wireless carriers, d) receive and respond to consumer complaints and requests for refunds, and e) are compensated by their vendor clients to manage these premium text transactions.

//

19

**SECOND AMENDED CLASS ACTION COMPLAINT**

1    132.   Based on aggregators' unique position, the FTC, in response to an FCC

2  request for comment, recommended that aggregators should be required to investigate

3  and detect cramming, including by undertaking due diligence of vendors before

4  permitting a vendor to use the billing platform to place charges on consumers' bills.  The

5  FTC also recommended that aggregators should be required to perform additional

6  investigation and detection of cramming in response to consumer complaints.

7    133.   Similarly, the Attorneys General of 37 States, the District of Columbia,

8  Guam, and the U.S. Virgin Islands submitted comments to the FTC regarding mobile

9  cramming in which they noted that aggregators have a significant financial incentive to

10  bill for services whether or not they have obtained authorization from consumers.

11    134.   Several public interest groups and consumer watchdogs—*i.e.* the National

12  Consumer Law Center, the National Consumers League, the Consumer Federation of

13  America, and the Virginia Citizens Consumer Counsel—in response to the FTC's request

14  for comments regarding the FTC's Mobile Cramming Roundtable, recommended that: a)

15  aggregators should be required to obtain bonds from third-party service providers prior to

16  beginning billing services, b) aggregators should be required to report consumer

17  complaints to the FTC, c) aggregators should be required to post online the fictitious

18  business names, addresses, and telephone numbers of content providers along with a

19  description of the pricing of the services offered by the content providers, and d)

20  aggregators should be required to conduct regular audits of their clients to ensure that

21  the clients are legitimate and actually providing a service.

22    135.   Based on the unique position of aggregators to detect and to prevent

23  cramming, as reflected in the statements of various governmental entities and consumer

24  watchdogs, a strong public policy exists to require aggregators—such as the Aggregator

25  Defendants—to take reasonable steps to prevent the type of cramming that affected

26  Plaintiffs.

27                          **CLASS ACTION ALLEGATIONS**

28    136.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Kristianson,

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   Fields, Hanson, Parmentier, and Brewster bring this action on their own behalf and as

2   representatives of all persons who received unsolicited SMS text messages from one or

3   more of the SMS short codes identified in Attachment A and who were billed for a

4   Subscription Plan associated with an SMS short code identified in Attachment A on a bill

5   associated with their mobile phone plan (the "Text Receipt Class").

6       137.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Parmentier,

7   Brewster, and Kunder bring this action on their own behalf and as representatives of all

8   persons who were charged for a Subscription Plan associated with an SMS short code

9   identified in Attachment A on their mobile phone bills (the "Enrollment Class").

10      138.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Parmentier brings

11  this action on his own behalf and as a representative of all persons who: a) were charged

12  for a Subscription Plan associated with an SMS short code identified in Attachment A on

13  their mobile phone bills, and b) resided in California during some or all of their enrollment

14  in the Subscription Plan (the "California Enrollment Subclass").

15      139.   A class action is appropriate here because there exist ascertainable

16  classes and a well-defined community of interest in the questions of law and fact

17  involved.

18      140.   The classes are readily ascertainable from Defendants' records and the

19  records of the class members' mobile service providers.

20      141.   A class action is the superior method for adjudicating this controversy

21  because: a) the classes are so numerous that the joinder of all members is impracticable,

22  b) questions of law and fact common to the classes predominate over any question

23  affecting only individual class members, and c) the claims of the representative Plaintiffs

24  are typical of the claims of the classes, and the representative Plaintiffs will fairly and

25  adequately protect the interests of the classes.

26      142.   The common questions of law and fact include:

27         •    Whether Defendants violated the Telephone Consumer Protection

28              Act, 47 U.S.C. §227, by sending commercial text messages to

members of the Text Receipt Class without their express consent;

- Whether Defendants violated the equitable doctrine of money had and received by enrolling members of the Enrollment Class in Subscription Plans without their knowledge or authorization and then charging them $9.99 per month for the enrollment;

- Whether Defendants converted the money of members of the Enrollment Class by enrolling them in Subscription Plans without their authorization and consent and then taking $9.99 per month from them until they cancelled the Subscription Plan;

- Whether Defendants engaged in an unlawful and/or fraudulent business practice in violation of California Business and Professions Code section 17200 by enrolling members of the California Enrollment Subclass in Subscription Plans without their knowledge or authorization;

- Whether Defendants were unjustly enriched by enrolling members of the Enrollment Class in the Subscription Plans;

- Whether Defendants engaged in negligence by disregarding extremely suspicious circumstances in enrolling members of the Enrollment Class and sending texts to members of the Text Receipt Class such that they breached their duty of care.

143. Plaintiffs can and will fairly and adequately represent and protect the interests of the classes because:

- All of the questions of law and fact regarding the liability of Defendants are common to the classes and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of Defendants as to all members of the classes;

- Without the representation provided by Plaintiffs, it is unlikely that

SECOND AMENDED CLASS ACTION
COMPLAINT

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

any class member would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

• Plaintiffs have retained competent attorneys who are experienced both in the conduct of class actions and telecommunications law. Plaintiffs and their counsel have the necessary resources to litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to discharge those duties to obtain the best possible recovery for the classes.

## FIRST CLAIM FOR RELIEF

### Violation of Telephone Consumer Protection Act, 47 U.S.C. §227
**(On behalf of Fields, Kristianson, Hanson, Parmentier, Brewster and the Text Receipt Class against All Defendants)**

144.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 143.

145.   On information and belief, the Aggregator Defendants sent SMS texts to Plaintiffs and other members of the Text Receipt Class without their consent.

146.   On information and belief, Defendant mBlox sent text messages to Plaintiffs Kristianson and Brewster without their consent.

147.   On information and belief, Defendants Mobile Messenger and m-Qube sent text messages to Plaintiffs Hanson and Parmentier without their consent.

148.   On information and belief, Defendant Motricity sent text messages to Plaintiff Fields without his consent.

149.   On information and belief, Wise Media authorized the Aggregator Defendants to send the text messages and had the ability to oversee the sending of the text messages by the Aggregator Defendants, controlling the manner and means of the text message campaign.

150.   On information and belief, the Aggregator Defendants sent SMS texts to Plaintiffs and the other members of the Text Receipt Class using equipment that had the

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1   capacity to store or to produce telephone numbers to be called, using a random

2   sequential number generator.

3       151.   The text messages sent to Plaintiffs and the other members of the Text

4   Receipt Class were calls within the meaning of the Telephone Consumer Protection Act.

5       152.   Neither Plaintiffs nor any other members of the Text Receipt Class provided

6   the Aggregator Defendants or Wise Media with prior express consent to receive the text

7   messages.

8       153.   Defendants' sending of texts to Plaintiffs and the other members of the Text

9   Receipt Class violated 47 U.S.C. §227(b)(1)(A).

10      154.   As a result of the Defendants' unlawful conduct, Plaintiffs and the other

11  members of the Text Receipt Class were harmed.

12                          **SECOND CLAIM FOR RELIEF**
                                **Money Had and Received**
13  **(On behalf of Parmentier, Brewster, and Kunder and the Enrollment Class against
                                    All Defendants)**
14

15      155.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1

16  through 143.

17      156.   Defendants involuntarily enrolled Plaintiffs and the other members of the

18  Enrollment Class in the Subscription Plans.

19      157.   Once enrolled, Defendants charged Plaintiffs and the other members of the

20  Enrollment Class $9.99 per month until they cancelled the Subscription Plans.

21      158.   Neither Plaintiffs nor any other members of the Enrollment Class authorized

22  their enrollment in the Subscription Plans or the $9.99 per month charged for the

23  Subscription Plans.

24      159.   Thus, Defendants received money under circumstances that in equity and

25  good conscience they should not be able to retain, because the fees obtained by

26  Defendants for enrollment in the Subscription Plans belong to Plaintiffs and the other

27  members of the Enrollment Class.

28  //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

160.   As a result of Defendants' misconduct, Plaintiffs and the other members of the Enrollment Class have been harmed and are entitled to relief.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On behalf of Parmentier, Brewster, and Kunder and the Enrollment Class against All Defendants)

161.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 143.

162.   Plaintiffs and the other members of the Enrollment Class owned the $9.99 per month that was charged to them by Defendants during their involuntary enrollment in the Subscription Plans.

163.   Defendants disposed of the money of Plaintiffs and the other members of the Enrollment Class in a manner that was inconsistent with their rights in this money.

164.   The money wrongfully taken by Defendants from Plaintiffs and the other members of the Enrollment Class comprises a specific, identifiable sum.

165.   As a result of Defendants' misconduct, Plaintiffs and the other members of the Enrollment Class have suffered damages.

### FOURTH CLAIM FOR RELIEF
### Violation of California Business & Professions Code section 17200
### (On behalf of Parmentier and the California Enrollment Subclass against All Defendants)

166.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 143.

167.   Defendants involuntarily enrolled Parmentier and the other members of the California Enrollment Subclass in Subscription Plans.

168.   Parmentier and the other members of the California Enrollment Subclass never knew about or consented to enrolling in the Subscription Plans.

169.   Once enrolled, Defendants charged Parmentier and the other members of the California Enrollment Subclass $9.99 per month until they cancelled the Subscription Plans.

25

**SECOND AMENDED CLASS ACTION COMPLAINT**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

170.   Defendants' above-described misconduct is a fraudulent business practice, as that term is used in Business and Professions Code section 17200, because a reasonable person would have been deceived by the representations and material omissions by Defendants, and would have been wrongfully charged as a result of Defendants' involuntary enrollment of consumers in the Subscription Plans.

171.   Defendants' above-described misconduct is an unlawful business practice, as that term is used in Business and Professions Code section 17200, because Defendants' conduct violates 47 U.S.C. §227, Business and Professions Code section 17602, 47 C.F.R. §64.3100, and Public Utilities Code section 2890.

172.   Defendants' misconduct is an unlawful business practice in violation of 47 U.S.C. §227 because on information and belief, Defendants sent SMS texts to Parmentier and the other members of the California Enrollment Subclass without their express consent, using equipment that had the capacity to store or to produce telephone numbers to be called, using a random sequential number generator.

173.   Defendants' misconduct is an unlawful business practice in violation of Business and Professions Code section 17602 because on information and belief Defendants made an automatic renewal and/or continuous service offer to Parmentier and the other members of the California Enrollment Subclass and: a) failed to present the terms of the offer in a clear and conspicuous manner before the Subscription Plan agreement was fulfilled, b) charged the accounts of Parmentier and the other members of the California Enrollment Subclass without first obtaining their affirmative consent, and c) failed to provide an acknowledgement of the purchase of the Subscription Plans with the terms, cancellation policy, and information regarding how to cancel in a manner that was capable of being retained by a consumer.

174.   Defendants' misconduct is an unlawful business practice in violation of 47 C.F.R. §64.3100 because on information and belief, Defendants initiated mobile service commercial messages without qualifying for any of the exceptions outlined in the regulation.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1      175.    Defendants' misconduct is an unlawful business practice in violation of

2  Public Utilities Code section 2890 because on information and belief Defendants caused

3  the cellular telephone bills for Parmentier and the other California Enrollment Subclass

4  members to contain charges for products and services other than what Parmentier and

5  the other California Enrollment Subclass members had authorized.

6      176.    By carrying out the above-described misconduct, Defendants engaged in

7  unlawful and fraudulent business practices in violation of California Business and

8  Professions Code section 17200.

9      177.    As a result of Defendants' misconduct, Plaintiffs and the other California

10  Enrollment Subclass members were harmed.

11                              **FIFTH CLAIM FOR RELIEF**

12                                 **Unjust Enrichment**
   **(On behalf of Parmentier, Brewster, and Kunder and the Enrollment Class against**
13                                  **All Defendants)**

14      178.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1

15  through 143.

16      179.    Defendants involuntarily enrolled Plaintiffs and the other members of the

17  Enrollment Class in Subscription Plans.

18      180.    Plaintiffs and the other members of the Enrollment Class never knew about

19  or consented to enrolling in the Subscription Plans.

20      181.    Once enrolled, Defendants charged Plaintiffs and the other members of the

21  Enrollment Class $9.99 per month until they cancelled the Subscription Plans.

22      182.    Defendants received the benefit of these charges and Defendants unjustly

23  retained this money at the expense of Plaintiffs and the other members of the Enrollment

24  Class.

25  //

26  //

27  //

28  //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

**SIXTH CLAIM FOR RELIEF**

**Negligence**
**(On behalf of Parmentier, Brewster, and Kunder and the Enrollment Class against All Defendants)**

183.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 143.

184.   In the alternative to allegations in the complaint that allege intentional misconduct by Defendants, Plaintiffs allege that Defendants owed Plaintiffs and the members of the Enrollment Class a duty to use reasonable care.

185.   In the alternative to allegations in the complaint that allege intentional misconduct by Defendants, Plaintiffs allege that Defendants were aware of extremely suspicious circumstances regarding the Subscription Plans and consumers' enrollment in the Subscription Plans, which would have put any reasonable person on notice that the Subscription Plans were fraudulent and that consumers were involuntarily enrolled.

186.   In the alternative to allegations in the complaint that allege intentional misconduct by Defendants, Plaintiffs allege that Defendants enrolled Plaintiffs and other members of the Enrollment Class in the Subscription Plans and charged them for the Subscription Plans while aware of extremely suspicious circumstances that would have put any reasonable person on notice that Plaintiffs and the members of the Enrollment Class had not consented to enrollment in the Subscription Plans or to being charged for the Subscription Plans.

187.   A person exercising reasonable care under the circumstances would not have enrolled Plaintiffs and other members of the Enrollment Class in a Subscription Plan.

188.   As a result of Defendants' negligence, Plaintiffs and other members of the Enrollment Class were harmed.

//

//

//

1

**PRAYER FOR RELIEF**

2      **WHEREFORE**, Plaintiffs respectfully request as follows:

3          1.      That the Court certify the Classes and Subclass as defined herein, appoint

4      Plaintiffs as class representatives, and appoint Plaintiffs' counsel as Class Counsel.

5          2.      That the Court enter a judgment finding that:

6              a.  Defendants violated the Telephone Consumer Protection Act, 47 U.S.C.

7                  §227 as to the members of the Text Receipt Class;

8              b.  Defendants violated the equitable doctrine of Money Had and Received

9                  as to the members of the Enrollment Class;

10             c.  Defendants committed Conversion as to the members of the Enrollment

11                 Class;

12             d.  Defendants violated California Business and Professions Code section

13                 17200 as to the members of the California Enrollment Subclass;

14             e.  Defendants were unjustly enriched at the expense of the Enrollment

15                 Class;

16             f.  Defendants committed negligence that harmed the Enrollment Class.

17         3.      That the Court award damages and monetary relief as follows:

18             a.  The greater of Plaintiffs' and the other members of the Text Receipt

19                 Class' actual monetary loss or $500 for each violation of the

20                 Telephone Consumer Protection Act;

21             b.  Damages in an amount to be determined at trial in the form of

22                 restitution of the money wrongfully charged to members of the

23                 Enrollment Class under the equitable doctrine of Money Had and

24                 Received;

25             c.  Compensatory damages in an amount to be determined at trial for

26                 Defendants' conversion of the money of members of the Enrollment

27                 Class;

28     //

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

d.  Damages in an amount to be determined at trial in the form of restitution of the money wrongfully charged to members of the California Enrollment Subclass under California Business and Professions Code section 17200;

e.  Restitution of the money by which Defendants were unjustly enriched at the expense of members of the Enrollment Class;

f.  Compensatory damages in an amount to be determined at trial for Defendants' negligence with respect to members of the Enrollment Class;

g.  Exemplary damages pursuant to California Civil Code §3294;

h.  Treble damages under the Telephone Consumer Protection Act;

i.  Statutory prejudgment interest;

j.  Plaintiffs' costs.

4.  Such other relief that the Court determines is just and proper.

Respectfully Submitted,

DATED:  October 1, 2013                    **KRONENBERGER ROSENFELD, LLP**


By:   s/ Jeffrey M. Rosenfeld
                    Jeffrey M. Rosenfeld

Attorneys for Plaintiffs

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

**REQUEST FOR JURY TRIAL**

Plaintiffs hereby demand a trial of this action by jury.

DATED:  October 1, 2013                    **KRONENBERGER ROSENFELD, LLP**

By:   s/ Jeffrey M. Rosenfeld
                              Jeffrey M. Rosenfeld

Attorneys for Plaintiffs



Case No. 3:12-cv-05160-WHA                    **SECOND AMENDED CLASS ACTION COMPLAINT**

31

1

## Attachment A

| | |
|---|---|
| 1. | 27140 |
| 2. | 28090 |
| 3. | 38774 |
| 4. | 39065 |
| 5. | 39137 |
| 6. | 42639 |
| 7. | 49510 |
| 8. | 53029 |
| 9. | 53801 |
| 10. | 54576 |
| 11. | 56614 |
| 12. | 58539 |
| 13. | 59297 |
| 14. | 64508 |
| 15. | 64673 |
| 16. | 67691 |
| 17. | 71085 |
| 18. | 72139 |
| 19. | 74039 |
| 20. | 74938 |
| 21. | 77466 |
| 22. | 77937 |
| 23. | 78149 |
| 24. | 80208 |
| 25. | 81371 |
| 26. | 83049 |
| 27. | 83660 |
| 28. | 84930 |
| 29. | 85731 |
| 30. | 87381 |
| 31. | 90391 |
| 32. | 91851 |
| 33. | 96534 |
| 34. | 96542 |
| 35. | 98070 |
| 36. | 98363 |
| 37. | 98963 |
| 38. | 99735 |