United States District Court

For the Northern District of California

1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11  EDWARD FIELDS, *et al*.

12        Plaintiffs,                         No. C 12-05160 WHA

13    v.

14  MOBILE MESSENGERS AMERICA,           **ORDER DENYING MOTION**
    INC., *et al*.                         **FOR CLASS CERTIFICATION**
15                                          **AND APPOINTMENT OF CLASS**
        Defendants.                         **COUNSEL**
16  _____/

17

18                    **INTRODUCTION**

19        In this putative class action involving an alleged text-message scam, plaintiffs move for

20  certification of two classes and one subclass under Rule 23(b)(3).  Plaintiffs also request

21  appointment of class counsel.  For the reasons stated below, plaintiffs' motion is **DENIED**.

22                    **STATEMENT**

23        The background has been set forth in prior orders (Dkt. Nos. 101, 108, 109, 163).  In

24  brief, plaintiffs are consumers who claim to be victims of a cell-phone scam known as

25  "cramming."  This is the practice of "placing unauthorized, misleading, or deceptive charges on

26  a consumer's telephone bill."  *Federal Trade Commission v. Inc21.com Corp.*, 745 F. Supp. 2d

27  975, 996 (N.D. Cal. 2010).  The Federal Trade Commission states that, along with the Federal

28  Communications Commission, it has "reviewed thousands of complaints about unauthorized

third-party charges on wireless bills [which] undoubtedly understates the full extent of wireless

United States District Court

For the Northern District of California

1  cramming by a substantial amount . . . . Many of the complaints involve recurring charges of just

2  under $10 a month for 'premium services' that provide trivia or horoscope information by text

3  message to a consumer's phone . . . . Consumers often report receiving a text message informing

4  them of a subscription to a service of which they have never heard and that they never

5  requested."  Federal Trade Commission, *FTC Calls Wireless Phone Bill Cramming a Significant*

6  *Consumer Problem* (July 23, 2012), http://www.ftc.gov/opa/2012/07/cramming.shtm.

7          Defendants in this action claim that plaintiffs consented to participating in the text-

8  message subscription plans by entering their information into defendant Wise Media, LLC's

9  websites, such as www.lovegenietips.com, www.horoscopegenie.com, and www.diettipz.com,

10  which detailed the subscription plans.  After entering their information, individuals would

11  receive text messages from Wise Media containing information about Wise Media's subscription

12  plans that offered flirting tips, horoscope updates, celebrity gossip, or weight-loss advice.  These

13  messages were sent by five-digit sender numbers ("short codes") allegedly owned by Wise

14  Media.  Plaintiffs, however, claim never to have visited any of Wise Media's websites and deny

15  voluntarily enrolling in a text-message subscription plan.  Some plaintiffs never responded to the

16  initial text message, some sent a reply text message rejecting enrollment, and some never even

17  received an initial text message because their phones were not programed to allow text-

18  messaging services.  Regardless of the response, all plaintiffs were sent a "confirmation text" of

19  their subscription.  Once enrolled, defendants charged each plaintiff $9.99 per month for the

20  subscription plan on their phone.

21          Although Wise Media is a defendant, the action has been stayed as to it by reason of a

22  stay order by the United States District Court for the Northern District of Georgia at the behest

23  of a receiver.  So, plaintiffs are instead pursuing so-called "aggregators" who had the roles

24  described below.

25          Defendant Mobile Messenger Americas, Inc. served as an aggregator for Wise Media by

26  helping Wise Media administer the subscription plans.  The complaint also names as defendants

27  two more aggregators, mBlox Incorporated and Motricity, Inc., who allegedly played the same

28  role as Mobile Messenger in the scam.  Plaintiffs allege that aggregator defendants helped

1   facilitate the scam by serving as the middlemen between the mobile carriers and merchant

2   defendant Wise Media by processing billings and monitoring customer complaints.  Moreover,

3   aggregator defendants allegedly initiated and reviewed the subscription plans and managed

4   carrier suspension and termination of the plans.  As a result, aggregator defendants retained a

5   significant portion of the revenue earned from the plans.

6          Defendants were allegedly able to enroll plaintiffs in subscription plans without their

7   consent by means of a software platform created by non-party Binary Factory and owned by

8   Wise Media.  The platform allegedly enabled defendants to send the initial text messages to

9   plaintiffs using a random sequential number generator, log plaintiffs' allegedly fake

10  confirmations in the subscription plans, and manage the subscription plans.

11         Plaintiffs now seek to certify two classes and one subclass under Rule 23(b)(3).  *First*,

12  plaintiffs seek to certify a "text-receipt class," a nationwide class alleging a claim under the

13  Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227(b)(1).  Section 227(b)(1)

14  prohibits placing calls to a mobile phone using an "automatic telephone dialing system" without

15  the recipient's prior express consent.  Text messages are considered calls under the TCPA.

16  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).  This class would be

17  limited to persons who received a text message from one of the short codes listed in Attachment

18  A of the second amended complaint.  *Second*, plaintiffs seek to certify an "enrollment class," a

19  nationwide class alleging claims under California law for money had and received, conversion,

20  unjust enrichment, and negligence.  This class would be limited to persons who received a text

21  message from one of the short codes listed in Attachment A of the second amended complaint

22  and did not receive a complete refund for such billings.  *Third*, plaintiffs seek to certify a

23  "California enrollment subclass," a class of California residents asserting claims under Section

24  17200 of the California Business & Professions Code.  This class would be limited to persons

25  who received a text message from one of the short codes listed in Attachment A of the second

26  amended complaint, did not receive a complete refund for such billings, and resided in California

27  at the time of their enrollment in the service.

28         This order follows full briefing and oral argument.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**ANALYSIS**

1

2          The gravamen of plaintiffs' complaint is that defendants' alleged cramming scheme

3    violated the TCPA.  It is unnecessary to reach a number of the issues under Rule 23 because

4    individualized issues of consent preclude certification of a nationwide text-receipt class.  Failure

5    to show predominance of common issues under Rule 23(b) is a showstopper.

6          Similarly, plaintiffs fail to show predominance of common issues of law with regard to

7    the proposed nationwide enrollment class and fail to show numerosity with regard to the

8    proposed California enrollment subclass.

9          **1.    TEXT-RECEIPT CLASS AND THE TCPA.**

10          The proposed text-receipt class alleges a claim under Section 227(b) of the TCPA.

11   Section 227(b) prohibits "any person within the United States . . . [from making] any call (other

12   than a call made . . . with the prior express consent of the called party) . . . using any automatic

13   telephone dialing system . . . [to] any cellular telephone service."  Here, plaintiffs are alleging

14   that defendants, who reside within the United States, used an automatic dialing system to send

15   text messages to plaintiffs' cell phones without plaintiffs' prior express consent.  Text messages

16   are considered calls under the TCPA.  *Satterfield*, 569 F.3d at 953.  Section 227(b)(3) allows for

17   a private right of action and a $500 statutory penalty per violation.

18          Defendants argue that individualized questions of consent should preclude certification of

19   a nationwide text-receipt class under the TCPA.  In support, they cite *Gene & Gene v. BioPay*,

20   541 F.3d 318, 327–329 (5th Cir. 2008), a Fifth Circuit decision that held that TCPA claims

21   cannot be brought as class actions because TCPA liability turns on whether class members had

22   consented to receive a fax.  According to the Fifth Circuit, there is no "sensible method of

23   establishing consent or lack thereof via class-wide proof."  *Id.* at 329.  Plaintiffs' reliance on

24   *Gene v. Gene* is misplaced in as much as our court of appeals has affirmed class certification of

25   TCPA claims.  *See Meyer v. Portfolio Recovery Assocs., LLC.*, 707 F.3d 1036, 1042 (9th Cir.

26   2012).

27          The parties also disagree about whether plaintiffs or defendants have the burden to prove

28   consent or lack thereof.  Our court of appeals has not provided clear guidance on which party has

4

United States District Court

For the Northern District of California

1   the burden to prove consent.  In *Meyer*, our court of appeals suggested that the burden of proving

2   consent lies with defendants, stating, "the Federal Communications Commission (FCC) issued a

3   declaratory ruling clarifying the requirement for consent in the context of the TCPA . . . ."  *Ibid.*

4   *Meyer* cites *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

5   *1991*, an FCC ruling that held that "the creditor should be responsible for demonstrating . . .

6   express consent."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.*

7   *Act of 1991, Request of A CA Int'l for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559,

8   565 (Jan. 4, 2008).

9          Yet, more to the point, the decision in *Meyer* also stated, "[t]he three elements of a TCPA

10  claim are:  (1) the defendant called a cellular telephone number; (2) using an automatic

11  telephone dialing system; (3) without the recipient's prior express consent."  *Meyer*, 707 F.3d at

12  1043.  California district court decisions issued after *Mayer* have diverged regarding whether

13  consent in TCPA putative class actions is a common issue that can be resolved with common

14  proof and none address the possible contradiction in *Meyer*.  *Compare Gannon v. Network Tel.*

15  *Servs., Inc.,* No. 12-9777, 2013 U.S. Dist. LEXIS 81250 (C.D. Cal. June 5, 2013) (Judge R. Gary

16  Klausner); *Connelly v. Hilton Grand Vacations Co.*, No. 12-599, 2013 WL 5835414 (S.D. Cal.

17  Oct. 29, 2013) (Judge Janis Sammartino) *with Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292,

18  295 (N.D. Cal. 2013) (Judge Richard Seeborg).  Because our court of appeals has stated that

19  consent is an element of a prima facie TCPA claim, this order is duty-bound to place the burden

20  on plaintiffs to prove a lack of prior express consent.  *Meyer*, 707 F.3d at 1043.

21         Both parties proffer evidence on the issue of consent.  Defendants primarily rely on the

22  testimony of Ryan McDonnell, the architect of Wise Media's subscription platform, as evidence

23  of mass consent.  McDonnell stated that the platform "confirmed the validity of consumer

24  subscription requests with secure PIN numbers" and that he tested the platform frequently (Decl.

25  of Ryan McDonnell ¶ 6; Dep. of Ryan McDonnell at 41:3–43:14).  These subscription requests

26  and confirmations also reflected the IP addresses of the computers used to visit Wise Media's

27  website and the PIN codes associated with each consumer.  McDonnell also maintained that he

28  trusted the data as "accurate" for purposes of reporting subscription information (*id.* at

5

1    76:15–77:13). According to plaintiffs' own expert, Arthur Olsen, over 1.5 million "subscriptions

2    were confirmed" by consumers by Wise Media's platform (Decl. of Arthur Olsen ¶ 10).

3    Defendants also submit records of incidents where putative class members consented to

4    defendants' texts by responding with a PIN and offer a report created by defendants that

5    categorized why consumers allegedly complained to their carriers about their subscription plans

6    (Decl. of Jonathan Murad, Exh. 1; Decl. of Jonathan Vimont, Exh. 5).

7         Plaintiffs argue, however, that the supposed confirmations logged by Wise Media's

8    platform were fraudulent because Wise Media employees could access the platform (Decl. of

9    Ryan McDonnell ¶ 15). Olsen stated that after analyzing a subset of confirmations recorded by

10   Wise Media's platform, he noticed suspicious patterns suggesting programmic confirmations,

11   rather than actual confirmations by consumers (Decl. of Arthur Olsen ¶ 12). Defendants

12   challenge Olsen's conclusions by noting that one of the allegedly suspicious patterns analyzed

13   by Olsen represented less than 10 percent of the total recorded confirmations on Wise Media's

14   platform. Olsen also admits that he has no experience and no benchmark to differentiate

15   between "erratic" and "uniform" subscription confirmation patterns (Dep. of Arthur Olsen at 72:

16   11–74:14; 74:24–75:3; 77:5–11; 108:24–110:7). Moreover, Jonathan Murad, a director for

17   defendant Mobile Messenger Americas, Inc., submitted evidence demonstrating that seemingly

18   unusual patterns actually reflect normal confirmation patterns experienced by other text-message

19   merchants (Decl. of Jonathan Murad ¶ 16). Finally, defendants point out that McDonnell, the

20   architect for Wise Media's platform, stated that wide-scale fraud in Wise Media's platform is not

21   possible because the platform records a consumer's confirmation with the consumer's phone

22   number, PIN, and IP address (Decl. of Ryan McDonnell at 138: 5–25).

23        Plaintiffs offer evidence that many putative class members, including named plaintiffs,

24   did not consent to being enrolled in the subscription plans (Decl. of Edward Fields ¶¶ 4–9, 14;

25   Decl. of Erik Kristianson ¶¶ 3–10; Decl. of David Hanson ¶¶ 3–10, 15; Decl. of Richard

26   Parmentier ¶¶ 3–10, 13; Decl. of Kevin Brewster ¶¶ 3–10, 13–14, Decl. of Kristian Kunder, ¶¶

27   3–10, 12). Furthermore, wireless carriers issued notices of suspension and termination of

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    defendants' subscription plans in part because of abnormally high subscription refund rates

2    (Decl. of Karl Kronenberger, Exh. 15).

3           After examining the evidence and other submitted documentation, this order finds that

4    plaintiffs have failed to meet their burden to prove that the issue of consent can be addressed

5    with class-wide proof.  In contrast to *Meyer*, where the court of appeals found that the defendant

6    "did not show *a single instance* where express consent was given before the call was placed,"

7    Wise Media's platform has recorded over 1.5 million instances of consent by subscribers on

8    Wise Media's platform.  *Meyer*, 707 F.3d at 1043 (emphasis added).  Plaintiffs' argument

9    alleging mass fraud does not satisfy their evidentiary burden under Rule 23(b) because it merely

10   speculates, without any actual evidence, that mass fraud *may* have occurred.  *Comcast Corp. v.*

11   *Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1432 (2013).  Thus, *even if* consent is an affirmative

12   defense, individualized inquiries regarding consent remain.  Plaintiffs have failed to prove

13   predominance under Rule 23(b) and their motion to certify a nationwide text-receipt class is

14   hereby **DENIED.**

15          Both parties raise evidentiary objections to the evidence proffered by the other side.  A

16   motion to certify or withdraw certification, however, is a preliminary procedure in which the

17   court makes no findings of facts or ultimate conclusions on plaintiffs' claims and evidence

18   presented in support of class certification need not be admissible at trial.  *Dominguez v.*

19   *Schwarzenegger*, 270 F.R.D. 477, 483 (N.D. Cal. 2010) (Judge Claudia Wilken).

20          **2.    NATIONWIDE ENROLLMENT CLASS.**

21          Plaintiffs also seek to certify a nationwide "enrollment class" alleging California state

22   law claims.  Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common

23   to class members predominate over any questions affecting only individual members."

24          A federal court sitting in diversity must look to the forum state's choice of law rules to

25   determine the controlling substantive law.  Under California's choice of law rules, the class

26   action proponent bears the initial burden to show that California has "significant contact or

27   significant aggregation of contacts" to the claims of each class member.  *Mazza v. Am. Honda*

28   *Motor Co.*, 666 F.3d 581, 589–90 (9th Cir. 2012).  Once the class action proponent makes this

7

United States District Court

For the Northern District of California

1  showing, the burden shifts to the other side to demonstrate "that foreign law, rather than

2  California law, should apply to class claims." *Ibid*.

3      Plaintiffs allege that Binary Factory functions as the California's significant contact to

4  each member of the putative class as it created the "central hub" of Wise Media's mobile

5  operations (Dep. of Ryan McDonnell at 59:17–18).  The hub was created and managed in

6  California (*id.* at 48:7–9; 130:8–24; 144:13–23).

7      Defendants argue that for a time, Wise Media "shared codes with Mobile Messenger"

8  rather than Binary Factory, and thus plaintiffs have failed to show that "*each* member of the

9  plaintiff class" has a connection to California.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

10  821–22 (1985) (emphasis added).  This order agrees.  Plaintiffs argue that defendants' argument

11  is "inopposite [because] . . . the class definitions only include short codes owned by Wise

12  Media" (Br. at 14).  Plaintiffs are making a distinction without a difference.  Ryan McDonnell,

13  the person who managed Binary Factory, stated that Wise Media co-owned the short codes with

14  Mobile Messenger, rather than owning the short codes outright (Dep. of Ryan McDonnell at

15  48:10–49:6).  If plaintiffs intended to argue that the short codes listed in attachment A to their

16  second amended complaint do not include the short codes that Wise Media shared with Mobile

17  Messenger, they should have done so with supporting documented evidence.  The burden is on

18  plaintiffs, the party moving for class certification, to make a prima facie showing of compliance

19  with Rule 23 requirements.  *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1432

20  (2013).

21      Plaintiffs also provide evidence that Mobile Messenger is headquartered in California

22  (Decl. of Karl Kronenberger, Exh. K).  They have provided no evidence, however, that Mobile

23  Messenger maintained their text-message platform in California, as opposed to some other state.

24  It should be noted that defendants state that plaintiffs have "failed to depose a single defendant in

25  this case," including Mobile Messenger (Opp. at 8–9).  "California courts interpret *Shutts* to be

26  satisfied where the defendant is headquartered in-state *and* the challenged action occurred within

27  the state."  *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009)

28  (emphasis added).  Thus, it might be the case that some members of the putative nationwide

1  enrollment class actually received their texts from a text-message platform maintained out-of-

2  state and thus have no significant contacts to California.  Plaintiffs have failed to meet their

3  burden under *Shutts* and their motion to certify a nationwide "enrollment class" alleging

4  California state law claims is **DENIED**.

5          **3.      CALIFORNIA ENROLLMENT SUBCLASS.**

6          Rule 23(a) requires that "the class [be] so numerous that joinder of all members is

7  impracticable."  In general, courts find the numerosity requirement satisfied when a class

8  includes at least 40 members.  *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.

9  1982), *vacated on other grounds*, 459 U.S. 810 (1982).

10         "Although plaintiff[s] need not allege the exact number or identity of class members to

11  satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not

12  sufficient."  *Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008) (Judge Marilyn Patel).  Here,

13  plaintiffs have not even attempted to speculate as to the number of members in the California

14  subclass.  The California subclass, by plaintiffs' own definition, excludes persons who received

15  complete refunds.  Plaintiffs present evidence that approximately 1.4 million individuals were

16  enrolled in defendants' subscription plans, but plaintiffs' own expert concedes that the 1.4

17  million enrollment figure does not take into account the substantial amount of refunds issued to

18  customers by Wise Media or the mobile carriers (Decl. of Arthur Olsen ¶ 10).  Plaintiffs

19  themselves admit that "refund rates reached as high as 98% of those 'enrolled,' depending on the

20  time period and Subscription Plan examined" (Br. at 18).

21          Plaintiffs are correct that even accounting for the refund rates, thousands of potential

22  class members remain (Decl. of Karl Kronenberger, Exh. 26).  The California subclass, however,

23  is also limited by plaintiffs to persons who "resided in California at the time of their enrollment

24  in the service."  In both their motion for class certification *and* reply to defendants' opposition,

25  plaintiffs ignore the California subclass and do not even attempt to provide an estimate or

26  evidence to support that *any* remaining putative class members resided in California at the time

27  of their enrollment in the service (Br. at 9; Reply Br. at 16).  Because plaintiffs have not met

28

**United States District Court**
For the Northern District of California

9

their burden to show numerosity under Rule 23(a)(1) as to their proposed California subclass, plaintiffs' motion to certify a California subclass is **DENIED.**

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is **DENIED**. Although a class has not been certified, this action shall proceed as to plaintiffs' individual claims in accord with the deadlines previously set in the case management order.


**IT IS SO ORDERED.**


Dated:  November 18, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE