**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD FIELDS, *et al.,*

    Plaintiffs,

  v.

MOBILE MESSENGERS AMERICA, INC., *et al*.

    Defendants.

No. C 12-05160 WHA

**SECOND ORDER RE mBLOX, INC.'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this putative class action involving an alleged text-message scam, defendant mBlox, Inc., moves for summary judgment on all claims against it. No other defendants join mBlox's motion. Plaintiffs oppose. For the reasons stated below, mBlox's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

The background has been set forth in prior orders (Dkt. Nos. 163, 229). In brief, plaintiffs are consumers who claim to be victims of a cell-phone scam known as "cramming." This is the practice of placing unauthorized, misleading, or deceptive charges on a consumer's telephone bill. Defendants in this action claim that plaintiffs consented to participating in the text-message subscription plans by entering their information into defendant Wise Media, LLC's websites, such as www.lovegenietips.com, www.horoscopegenie.com, and www.diettipz.com, which detailed the subscription plans. After entering their information, individuals would receive text messages from Wise Media containing information about Wise Media's subscription

plans that offered flirting tips, horoscope updates, celebrity gossip, or weight-loss advice. These messages were sent by five-digit sender numbers ("short codes") allegedly owned by Wise Media. Plaintiffs, however, claim never to have visited any of Wise Media's websites and deny voluntarily enrolling in a text-message subscription plan. Some plaintiffs never responded to the initial text message, some sent a reply text message rejecting enrollment, and some never even received an initial text message because their phones were not programed to allow text-messaging services. Regardless of the response, all plaintiffs were sent a "confirmation text" of their subscription. Once enrolled, defendants charged each plaintiff $9.99 per month for the subscription plan on their phone.

Although Wise Media is a defendant, the action has been stayed as to it by reason of a stay order by the United States District Court for the Northern District of Georgia at the behest of a receiver. So, plaintiffs are instead pursuing so-called "aggregators" who had the roles described below.

Defendant Mobile Messenger Americas, Inc. served as an aggregator for Wise Media by helping Wise Media administer the subscription plans. The complaint also names as defendants two more aggregators, mBlox Incorporated and Motricity, Inc., who allegedly played the same role as Mobile Messenger in the scam. Plaintiffs allege that aggregator defendants helped facilitate the scam by serving as the middlemen between the mobile carriers and merchant defendant Wise Media by processing billings and monitoring customer complaints. Moreover, aggregator defendants allegedly initiated and reviewed the subscription plans and managed carrier suspension and termination of the plans. As a result, aggregator defendants retained a significant portion of the revenue earned from the plans.

Defendants were allegedly able to enroll plaintiffs in subscription plans without their consent by means of a software platform created by non-party Binary Factory and owned by Wise Media. The platform allegedly enabled defendants to send the initial text messages to plaintiffs using a random sequential number generator, log plaintiffs' allegedly fake confirmations in the subscription plans, and manage the subscription plans.

On May 17, 2013, mBlox moved for summary judgment on all claims alleged in plaintiffs' first amended complaint. Plaintiffs moved under Rule 56(d) to defer ruling on mBlox's motion, arguing that discovery had not yet been completed. An order delayed consideration of mBlox's summary judgment motion and directed both parties to "diligently pursue and provide appropriate discovery" (Dkt. No. 109). Afterwards, plaintiffs filed a second amended complaint, alleging: (1) money had and received, (2) conversion, (3) unjust enrichment, (4) violation of California's Unfair Competition Law ("UCL"), Section 17200 of the California Business & Professions Code, (5) negligence, and (6) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227. Plaintiffs have recently declared to another court that "discovery [in this action] has been completed" (Decl. of Annette McGarry, Exh. 2 at 2).

On November 18, 2013, plaintiffs' motion to certify two classes and one subclass under Rule 23 was denied (Dkt. No. 229). mBlox now renews its summary judgment motion. On December 17, 2013, plaintiffs dismissed the other aggregator defendants (Dkt. Nos. 256). Thus, only the claims of plaintiffs Erik Kristianson and Kevin Brewster are at issue as they are the only plaintiffs who individually assert claims against mBlox.

This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In this analysis, all reasonable inferences must be drawn in the light most favorable to the non-moving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010). Unsupported conjecture or conclusory statements, however, cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

3

Defendant mBlox raises several arguments in support of its motion for summary judgment. This order will address each claim in turn.

**1.     TCPA**.

Plaintiffs Kristianson and Brewster both allege violations of the TCPA. The elements of a TCPA claim are: (1) the defendant called a cell-phone number, (2) using an automatic telephone dialing system, (3) without the recipient's prior express consent. *Meyer v. Portfolio Recovery Assocs., LLC.*, 707 F.3d 1036, 1043 (9th Cir. 2012), citing 47 U.S.C. 227(b).[*] Text messages are considered calls under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009). Moreover, an automatic telephone dialing system ("ATDS") is defined by statute as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1).

*First*, mBlox argues that plaintiffs' TCPA claim fails because mBlox did not send text messages to plaintiffs Kristianson or Brewster (Br. at 6–7). Our court of appeals has not yet ruled on what constitutes "sending" a text message under the TCPA (and neither has any judge in this district). The FCC has interpreted the TCPA to exempt entities that "simply provide transmission facilities," but this exemption does not apply to "entities that [have] a high degree of involvement in, or actual notice of, the unlawful activity and [fail] to take steps to prevent such facsimile transmissions." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 8780 (1992). Courts outside of this circuit have ruled similarly. *See, e.g., Merch. & Gould, P.C. v. Premiere Global Servs.*, 749 F. Supp. 2d 923, 936 (D. Minn. 2010) (Judge John R. Tunheim); *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 92–93 (D.D.C. 2006) (Judge John D. Bates); *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 896–97 (W.D. Tex. 2001) (Judge Sam Sparks).

mBlox cites the deposition testimony of Jay Emmet, its former president, who testified that mBlox does not initiate or send text messages to consumers (Dep. of Jay Emmet at

---

[*] A previous order has already addressed the possible contradiction in *Meyer* regarding which party has the burden to prove consent (Dkt. No. 229 at 4–5).

4

15:18–23; 46:7–16). mBlox also cites to the deposition testimony of Ryan McDonnell, the architect of Wise Media's text-message platform, who states that the mobile carriers, rather than the defendant aggregators, sent the text messages to plaintiffs (*id.*, Exh. 4, Dep. of Ryan McDonnell, 63:10–18). Plaintiffs, however, cite to a different statement by McDonnell: "while [Wise Media's] Platform forwarded to the aggregators requests to send [text] messages, the aggregators themselves actually send or transmitted the [text] message to the end recipient (consumer), through the consumer's mobile carrier's network" (Decl. of Ryan McDonnell ¶ 9). Plaintiffs also cite to mBlox's service agreement with Wise Media, which states that mBlox must consent to all text messages processed by its system (Decl. of John Roddy, Exh. 24 at 35, 47–48). While McDonnell's deposition testimony seems to indicate that mBlox merely acted as a passive conduit for Wise Media's text messages, his sworn declaration and mBlox's own documents alternatively suggest that mBlox took an active role in transmitting the text messages. Credibility determinations and weighing of the evidence are jury functions. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Thus, there is a genuine dispute of material fact as to whether mBlox actively participated in, or knew of, the unlawful activity in violation of the TCPA.

*Second*, mBlox argues that it does not have or use an ATDS. 47 U.S.C. 227(a)(1) defines an ATDS as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Based on the clear language of the TCPA, an ATDS "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the *capacity* to do it." *Satterfield*, 569 F.3d at 951 (emphasis added).

In support, mBlox cites to Emmet's deposition testimony. Emmet states that mBlox "does not store numbers . . . . We do not maintain them. A historical transaction record is written, and at that point it is archived" (Dep. of Jay Emmet at 44:6–16). When asked whether the transactions were written in a way that would allow mBlox to send a subsequent text message or pull up the phone numbers from the transaction records, he replied, "No" (*id*. at

5

44:17–19; 45:8–15). When asked whether mBlox can generate a list of phone numbers, he replied, "No" (*id.* at 46:2–25).

In response, plaintiffs argue that the focus should be on whether mBlox's equipment has the capacity to dial numbers *without human intervention* (Opp. at 14). This order agrees. Our court of appeals in *Meyer* cited an FCC ruling that broadened the definition of an ATDS beyond mere equipment that uses "random or sequential number generators" because "the evolution of the teleservices industry has progressed . . .". *Meyer*, 707 F.3d at 1043. In particular, the FCC found that predictive dialers fall into the statutory definition of an ATDS because "[t]he basic function of such equipment [is] . . . the capacity to dial numbers without human intervention." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003). While plaintiffs have not alleged that mBlox uses a predictive dialer, mBlox's equipment functions similarly. Like predictive dialers, mBlox's equipment "receive[s] numbers from a computer database," namely Wise Media's text-message platform, "and then dial[s] those numbers [without human intervention]." *Id.* at 14090; *see also Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (Judge John F. Grady). Moreover, Emmet admitted in his deposition that there is no human interaction or intervention involved in sending text messages from mBlox's system (Dep. of Jay Emmet at 30:15–21). In addition to Emmet's deposition testimony, plaintiffs also cite to the declaration of their expert, Arthur Olsen, who states that mBlox's equipment has the capacity to send millions of texts per month and that the temporal manner in which the texts were sent indicates that "human agency was not involved" (Decl. of Arthur Olsen ¶¶ 9, 12).

In sum, there are genuine disputes of material fact regarding whether mBlox sent text messages to plaintiffs Erik Kristianson and Kevin Brewster using an ATDS.

### 2. MONEY HAD AND RECEIVED, CONVERSION, AND UNJUST ENRICHMENT.

Plaintiff Brewster also asserts claims against mBlox for money had and received, conversion, and unjust enrichment. mBlox argues that Brewster has failed to show that mBlox "acquired and retained" his payment to his mobile carrier. As Brewster concedes, all three claims for relief require proof that defendant actually acquired and retained the property (Opp. at

6

20–21). In response, Brewster states that he paid the subscription fee that appeared on his cell-phone bill and has not yet been refunded (Decl. of Kevin Brewster ¶¶ 17–20). Moreover, he refers to a billing note as evidence that his mobile carrier remitted his payment to mBlox based on the short code associated with the text message he received (Decl. of John Roddy, Exhs. 24, 28). The billing note, however, clearly indicates that the carrier did not actually pay mBlox any money; due to a credit imbalance, mBlox paid the carrier $105.57 (*id.*, Exh. 28). In order to prevail on these common counts, Brewster cannot simply refer to the specific amount of money that he lost. *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395 (2007). Rather, he must be able to show mBlox possesses "specific, identifiable sums" of money that he has legal claim over. *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997). As there is no compelling evidence that his carrier ever remitted his payment to mBlox, mBlox's motion for summary judgment as to Brewster's claims for money had and received, unjust enrichment, and conversion is **GRANTED.**

### 3. NEGLIGENCE.

Regarding plaintiff Brewster's negligence claim, mBlox raises two arguments. *First*, mBlox asserts that Brewster may have suffered no harm because he is unsure about whether he received credit for his Wise Media charge. This uncertainty about a material fact, however, is the kind of question that should be left for a jury to weigh. In addition, while Brewster bears the burden to show the original charge, mBlox bears the burden to show that the charge was refunded. Brewster's inability to decipher his cell-phone bill does not translate into adequate proof that is sufficient to satisfy mBlox's burden to show a refund. *Second*, mBlox argues that Brewster has failed to show a "special relationship" with mBlox as required by the economic loss doctrine. In order to determine whether a special relationship exists under the economic loss doctrine, six factors must be considered: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm. *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803–05 (1979). mBlox has

already conceded the certainty of injury factor (Reply Br. at 5). As to the other factors, mBlox merely weighs the evidence that Brewster puts forth against its evidence in order to argue that the weight of evidence leans against finding a special relationship under the *J'Aire* factor test. Weighing of evidence, however, is a jury function. *Reeves*, 530 U.S. at 150. The mere fact that mBlox concedes a factor demonstrates that there are genuine issues of material fact and summary judgment on this issue is **DENIED.**

### 4. CALIFORNIA UCL.

Finally, mBlox lodges several arguments against plaintiffs' UCL claim. Plaintiffs' second amended complaint, however, does not allege UCL claims on behalf of either plaintiffs Kristianson or Brewster (Compl ¶¶ 166–177). Thus, mBlox's motion for summary judgment on plaintiffs' UCL claim is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, mBlox's motion for summary judgment on plaintiff Kevin Brewster's claims for money had and received, conversion, and unjust enrichment is **GRANTED**. Summary judgment on all other claims is **DENIED.** The parties are reminded that non-expert discovery must be concluded by **FEBRUARY 28, 2014.** The final pretrial conference for this action will be held on **MAY 14, 2014**.

**IT IS SO ORDERED.**

Dated: December 23, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE